CUMMINGS, Chief Judge.
 

 Appellant Michael Nigro appeals from the district court’s affirmance, 35 B.R. 420, of an order entered by Bankruptcy Judge Robert Eisen. On June 9, 1983, the bankruptcy court vacated its previous order of March 31, 1983, which had confirmed the sale of the debtor’s property to appellant for $120,000. Nigro alleges, as he did in the district court, that the bankruptcy court abused its discretion in vacating its earlier order and in conducting a new sale. For the reasons set forth below, we reverse the bankruptcy court’s June 9 order despite the objections of bankruptcy trustee Bial-las and sole creditor Win Kwong Liu.
 

 I
 

 Michael Nigro, an attorney, represented Alan Yong, the principal of the debtor in the bankruptcy proceedings below. On March 17, 1983, Raymond Costello, then trustee of the bankruptcy estate of the debtor Chung King, Inc., filed a complaint seeking court permission to sell real estate owned by the bankruptcy estate to the Unity Masonic Lodge for $116,300. The trustee estimated in his complaint that the sale would net approximately $4,000 for the estate after paying off the liens on the property. At a March 31 hearing held by Judge Eisen, Nigro, acting on his own behalf, presented an offer of $120,000 to purchase the property. The trustee recommended that the bankruptcy court approve the sale to Nigro and estimated that the proposed sale would net “$8,000 or $9,000 maybe even less” for the bankruptcy estate (p. 8 of R. Item 11). At the March 31 hearing the court approved the $120,000 sale to Nigro and issued a confirming order. The court also approved a settlement entered into between the trustee and the sole creditor, Mr. Win Liu, to split any net proceeds from the sale.
 

 Nigro performed a title search subsequent to the court’s March 31 confirmation and discovered that $4,526.30 in back taxes assessed against the property remained unpaid. He then prepared a closing statement which showed a net loss to the estate of $2,238.78 from the approved sale of $120,000. He conferred with the trustee and agreed to make up the $2,238.78 loss to the estate on the sale (Nigro Br. 3; p. 3 of R. Item 13) by increasing the offer to $124,-275.29 (Nigro Reply Br. 3).
 

 
 *549
 
 Upon learning that the bankruptcy estate would not receive any proceeds if the property were sold to Nigro for $120,000 and that Unity Masonic Lodge had made a subsequent offer of $125,000, creditor Win Liu filed a motion requesting the bankruptcy court to vacate its March 31 order. At the May 10 hearing on Liu’s motion, Unity Masonic complained that it had not received sufficient notice of the March 31 hearing nor the $120,000 Nigro bid and that Nigro had enjoyed a “preferred position” in the bidding as lawyer for Alan Yong, the debt- or’s principal. The court indicated that there was sufficient notice but offered to vacate the sale if a sufficiently higher new offer was made (pp. 10, 12-13 of R. Item 12). Judge Eisen stated that the $125,000 offer of Unity Masonic would benefit the creditor only minimally (yielding $362.36 (p. 9 of R. Item 12)) and would not justify setting aside the sale to Nigro (p. 8 of R. Item 12). The court continued the hearing until June 8,1983, at which time new offers were to be considered.
 

 At the June 8 hearing, Unity Masonic presented a bid of $135,000 for the property. The bankruptcy court then ruled that the offer was sufficiently greater than Nig-ro’s $120,000 bid to justify reopening the bidding. The court set 9:30 A.M. the following day as the deadline for any additional bids, and on June 9 it vacated the March 31st sale and approved the sale of the property to Nigro, who had his client’s permission to purchase the property “on his own” (p. 4 of R. Item 7), for $142,000.
 

 Nigro appealed the bankruptcy court’s decision to vacate and requested that the March 31 order, allowing sale of the property to Nigro for $120,000, be reinstated. The district court ruled that the bankruptcy court’s vacating of the confirmed March 31 sale was proper because of the mistaken failure to consider back taxes in approving the sale and because of the significant difference between the confirmed sale price of $120,000 and the later $135,000 bid by Unity Masonic. The court, however, rejected the appellees’ claims that Unity Masonic’s lack of adequate notice of Nigro’s $120,000 bid or Nigro’s “preferred position” as the debtor principal’s attorney were valid grounds for affirming the bankruptcy court June 9 order vacating the sale of the property to. Nigro for $120,000. Consequently, Judge Bua affirmed the bankruptcy court’s June 9 order approving the sale of the property to Nigro for $142,000.
 

 II
 

 It is important to define the specific issue before us in order to ensure that the appropriate legal standards are applied. We are reviewing the June 9 decision of the bankruptcy court to vacate a confirmed sale. The setting aside of an order confirming a sale involves different concerns and less discretion on the bankruptcy judge’s part than the denial of confirmation of a sale in the first instance. See,
 
 e.g., In re General Insecticide Co.,
 
 403 F.2d 629, 630-631 (2d Cir.1968); 4B Collier on Bankruptcy, ¶ 70.98[17], pp. 1182-1187 (14th ed. 1978). The bankruptcy court’s confirmation or refusal to confirm a sale only will be overturned in extreme cases if there has been an abuse of discretion. Mere inadequacy of price or minor errors in the judicial sale process may justify a bankruptcy judge’s refusal to confirm.
 
 In re Webcor,
 
 392 F.2d 893, 898 (7th Cir.1968);
 
 Smith v. Juhan,
 
 311 F.2d 670, 671-673 (10th Cir.1962);
 
 In re Jewett & Sowers Oil Co.,
 
 86 F.2d 497, 498 (7th Cir.1936);
 
 In re Burr Manufacturing and Supply Co.,
 
 217 Fed. 16, 21 (2d Cir.1914); 4B Collier on Bankruptcy, ¶ 70.98[17], pp. 1182, 1187, 1192. The governing principle at a confirmation proceeding is the securing of the highest price for the bankruptcy estate. See
 
 In re Insecticide,
 
 403 F.2d at 631.
 

 A bankruptcy court may vacate a prior order confirming a sale, however, only in very limited circumstances in the exercise of its powers as a court of equity.
 
 In re Beck Industries, Inc.,
 
 605 F.2d 624, 634 (2d Cir.1979);
 
 Mason v. Ashback,
 
 383 F.2d 779, 780 (10th Cir.1967). This Court stated the relevant standard in
 
 Webcor
 
 as: “[o]nce the sale * * * [is] confirmed, the existence of fraud, mistake or a like infir
 
 *550
 
 mity would be necessary to set [a] confirmed sale aside.” 392 F.2d at 899. See Bankruptcy Rule 9024 (applying to bankruptcy cases Fed.R.Civ.Pro. 60, which allows a judgment to be set aside for “(1) mistake, inadvertence, surprise or excusable neglect * * * (3) fraud, misrepresentation * * * (6) any reason justifying relief * * *. Fed.R.Civ.Pro. 60(b)). As explained in
 
 Webcor,
 
 “[i]f parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.”
 
 In re Webcor,
 
 392 F.2d at 899. This policy of finality protects confirmed sales unless “compelling equities” outweigh the interests in finality.
 
 In re Transcontinental Energy,
 
 683 F.2d 326, 328 (9th Cir.1982);
 
 Matter of Cada Investments, Inc.,
 
 664 F.2d 1158, 1162 (9th Cir.1981). See also
 
 In re Times Sales Finance,
 
 445 F.2d 385, 386-387 (3d Cir.1971) (requiring a “fundamental defect” to vitiate a confirmed sale);
 
 In re Lamont,
 
 453 F.Supp. 608, 609-610 (N.D.N.Y.1978), affirmed, 603 F.2d 213 (requiring a “fundamental” defect which would “shock the conscience of the chancellor” to set aside a confirmed sale); 4B Collier on Bankruptcy, ¶ 70.98[17], p. 1187.
 

 While this equitable determination is largely within the province of the bankruptcy court,
 
 Webcor,
 
 392 F.2d at 898, the court’s range of discretion on this matter is quite narrow. The failure to apply the appropriate standard or the vacating of a sale because of minor errors would amount to an abuse of discretion.
 

 It is also well settled that after confirmation, the offer of a substantially higher sale price alone is insufficient to set aside a confirmed sale unless the initial sale price is so grossly inadequate as to shock the conscience of the court.
 
 Smith v. Juhan,
 
 311 F.2d at 670;
 
 In re Burr,
 
 217 Fed. at 21.
 

 Grossly Inadequate Sales Price
 

 The district court erred in holding that the inadequacy of the March 31st Nig-ro offer served as a sufficient basis alone for setting aside the confirmation order of that date accepting Nigro’s $120,000 bid which was later adjusted by Nigro to $124,-275.29. As noted above, the vacating of a confirmed sale solely because the confirmed sale price is lower than a subsequent bid is proper only where the initial confirmed sale price was so grossly inadequate as to shock the conscience of the court. The district court erroneously relied on one pre-confirmation case,
 
 In re Muscongus Bay,
 
 597 F.2d 11 (1st Cir.1979), and the standard utilized therein, in reaching its decision.
 
 Muscongus
 
 affirmed a bankruptcy court’s reopening of bids prior to confirmation where a $26,200 bid was offered prior to confirmation but after the court had received only a $23,000 bid at the scheduled public sale.
 
 Id.
 
 at 12. Here the district court noted that the later bid in
 
 Muscongus
 
 was 12.3% higher than the original bid and that Unity Masonic’s $135,-000 offer of June 8 in the present case was 12.5% higher than the $120,000 bid of Nig-ro (p. 7 of the district court’s opinion). But Unity Masonic’s June 8 bid was in fact only 8.6% higher than the adjusted bid of $124,-275.29 (Appellees’ Br. 13 n. 1). The district court concluded that Nigro’s bid was “grossly inadequate” and found the bankruptcy court justified in vacating the March 31 order
 
 (id.).
 

 Appellees submit and this Court has discovered no case which holds that an 8.6% or even a 12.5% difference between the confirmed sale price and a later offer renders the original confirmed sale price grossly inadequate or shocking to the court's conscience. Rather, only much larger differences between the confirmed price and a later offer have resulted in findings of “grossly inadequate.” See
 
 Wolverton v. Shell Oil Co.,
 
 442 F.2d 666 (9th Cir.1971);
 
 Daly v. Ely,
 
 51 N.J.Eq. 104, 26 A. 263 (1893);
 
 Hardin v. Smith,
 
 49 Tex. 420 (1878);
 
 Lankford v. Jackson,
 
 21 Ala. 650 (1852). Cf.
 
 Geeslin v. Martin, Geeslin, Martin, Inc.,
 
 387 So.2d 221, 224 (Ala.Civ.App.1980). Relatively small differences, such as in the present case, have been expressly found not to shock the conscience
 
 *551
 
 of the court and not to cause the original confirmed sale price to be viewed as grossly inadequate. See
 
 Smith v. Juhan,
 
 311 F.2d at 672 ($7,500 confirmed sale price and $8,500 later bid — 13% difference);
 
 In re Burr,
 
 217 F.2d at 20-21 ($6,250 confirmed sale price and later bid of $8,500 — 36% difference). Nigro’s $120,000 confirmed bid, upped to $124,275.29, especially where no argument has been presented that such amount is below the property’s appraised value, was not “grossly inadequate”
 
 [1]
 
 under the relevant authorities as compared to Unity Masonic’s $135,000 bid.
 

 Mistake
 

 Neither in our view could the March 31 sale be set aside on the basis of compelling equities arising out of “fraud, mistake or a like infirmity.”
 
 Webcor,
 
 392 F.2d at 899. We consequently reverse the district court and hold that the bankruptcy court committed an abuse of discretion.
 

 It is not clear from the case law precisely what type of magnitude of “fraud, mistake or * * * infirmity” justifies the setting aside of a judicial sale in bankruptcy. By far the most frequent mistake or infirmity held to warrant vacating a confirmed sale is defective notice to interested parties of the judicial sale. See,
 
 e.g., In re Times Sales,
 
 445 F.2d at 386-387;
 
 Wolverton,
 
 442 F.2d at 668, 670;
 
 Mason,
 
 383 F.2d at 780;
 
 In re Lamont,
 
 453 F.Supp. at 610;
 
 In re Insulation & Acoustical Specialities, Inc.,
 
 311 F.Supp. 1209, 1215-1216 (W.D.Mo.1969), affirmed, 426 F.2d 1189 (8th Cir. 1970);
 
 In re Winstead,
 
 33 B.R. 408, 410-411 (D.C.1983). Other objections deemed sufficient to defeat confirmation, though more isolated in frequency, involve further irregularities in the judicial sale proceedings themselves such as “unfairness toward bidders, stifling of competition, inaccurate or otherwise insufficient advertisement, sham bidding or ‘puffing,’ * * * and interference with the orderly conduct of the sale.” 4B Collier on Bankruptcy, ¶ 70.98[17], pp. 1189-1190.
 

 Appellant Nigro misinterprets our
 
 Web-cor
 
 standard to mean that the bankruptcy court may vacate a confirmed sale only when equity would avoid a like sale between private parties (Br. 5). Although other courts have stated a “private parties” test in this context, see,
 
 e.g., Morrison v. Burnette,
 
 154 F. 617, 624 (8th Cir.1907), this Circuit has never adopted so strict a rule. Nor do we believe that it would be wise to employ such a test since judicial sales in bankruptcy, where the protection of third party creditors is of paramount importance, see
 
 Procter & Gamble Manufacturing Co. v. Metcalf,
 
 173 F.2d 207 (9th Cir.1949), are very different from private party' sales. An attempt to apply the law concerning private party sales in these circumstances would be confusing at best.
 

 The most permissive statement of law governing vacation of confirmed bankruptcy sales appears to be that of the Tenth Circuit set forth in
 
 Mason v. Ashback
 
 in 1967:
 

 A court of equity may set aside an order of sale either before or after confirmation when it appears that the same was entered through mistake, inadvertence, or improvidence. While a judicial sale will not be set aside on the ground of inadequacy of price alone, unless the inadequacy is so great as to shock the conscience of the chancellor, inadequacy of price, accompanied with other circumstances having a tendency to cause such inadequacy, or indicating any apparent unfairness or impropriety, will justify setting aside the sale. Such additional circumstances may be slight and insufficient in themselves to justify vacating the sale.
 

 383 F.2d at 780 (quoting
 
 Webster v. Barnes Banking Co.,
 
 113 F.2d 1003, 1005 (10th
 
 *552
 
 Cir.1940). The “fraud, mistake or a like infirmity” language of
 
 Webcor
 
 cannot be construed to allow “slight” inadvertence or improvidence combined with mere inadequacy of price to upset confirmed sales. Such a rule is inconsistent with this Court’s expressed concern with protecting the principle of finality in judicial sales in bankruptcy proceedings.
 
 Webcor, supra.
 
 The Tenth Circuit has never gone so far, however, as to require or affirm the vacating of a confirmed sale on facts similar to those before us.
 
 [2]
 

 A fair interpretation of the
 
 Webcor
 
 fraud, mistake or like infirmity test in light of the concerns expressed in that opinion regarding the principle of finality requires us to reject an approach which allows slight errors combined with a mere inadequacy of price to justify vacating a confirmed sale. Instead, we read
 
 Webcor
 
 to require that errors raised by a party seeking to vacate a confirmed sale must
 
 of themselves
 
 justify setting aside the sale. See
 
 In re Times Sales,
 
 445 F.2d at 386 (requiring fundamental errors);
 
 In re Transcontinental,
 
 683 F.2d at 328 (requiring compelling equities);
 
 In re Cada,
 
 664 F.2d at 1162 (requiring compelling equities). The bankruptcy judge, having determined that the compelling equities of the situation caused by fundamental errors outweigh the interests in finality, must expressly list the compelling equities or fundamental errors which motivate the extraordinary decision to vacate a confirmed sale.
 

 The only rational justification for the “fraud, mistake or a like infirmity” rule is that the existence of undiscovered errors or infirmities may prevent the bankruptcy judge from making a fair and proper confirmation decision based on accurate knowledge of all relevant factors. Later discovery of minor errors in the judicial sale process does not demonstrate that the judge was prevented from rendering a fair determination. To allow bankruptcy judges to upset a confirmed sale because of the presence of minor errors (which would not have prevented the confirmation of the sale in the first instance and which were ■promptly corrected) and of a later offer exceeding the confirmed sale price would give bankruptcy judges nearly as much discretion before confirmation of a sale as after and would go a long way toward eroding the principle of finality in judicial sales. It would specifically invite bankruptcy courts to circumvent the “grossly inadequate" rule
 
 {supra
 
 p. 550) by allowing the presence of minor errors to justify vacating confirmed sales where the confirmed sale price is not the highest obtainable price but is not grossly inadequate and where as here those errors were corrected. In the case before us, the bankruptcy judge did not apply the appropriate standard and any equitable concerns present cannot be characterized as fundamental or compelling so as to justify the judge’s decision to vacate.
 

 The bankruptcy judge below appeared to apply the Tenth Circuit rule in deciding to vacate the sale. Judge Eisen acknowledged the grossly inadequate standard as applying to situations where inadequacy of the sale price is the sole concern, but distinguished the case before him and indicated the standard of decision applied:
 

 “I agree with you in that particular instance that the amount might be required, that ratio. I am taking into consideration in exercising the Court’s discretion all the surrounding circumstances of this matter and the offering of the property for sale, and in my discretion I feel it is sufficiently great an increase to reopen bidding.” (p. 17 of R. Item 13).
 

 The court clearly relied on the higher post-confirmation bid of $135,000 to vacate the sale at the corrected price of $124,275.29
 
 *553
 
 and failed to specify what compelling equities (“surrounding circumstances”) motivated its decision.
 

 The bankruptcy judge’s action was contrary to the
 
 Webcor
 
 standard. In reopening the bidding he specifically indicated that he would not vacate the sale solely on the basis of any mistake or infirmity, but only if a substantially higher bid was received. The court compared Nigro’s original offer of $120,000 to the $125,000 offer at the May 10 hearing of Unity Masonic (which would have yielded approximately $300 to the estate and creditor), noted the slight benefit accruing from the $125,000 offer and stated that “there is really no detriment to the estate from accepting or approving the original buyer” (p. 8 of R. Item 12). The court indicated that only receipt of a higher bid would allow the court to set aside the original sale as approved:
 

 “I could * * * set a date to accept new offers; if there was a substantial difference * * * the Court could use extraordinary powers. If there was no substantial, extraordinary or in the Court’s discretion, difference, the Court would affirm its previous ruling * * * ” [approving the $120,000 Nigro bid adjusted by $4,275.29] (pp. 8-9, 13 of R. Item 12).
 

 The court was quite willing to approve the sale knowing that appellee creditor Liu would receive nothing.
 
 [3]
 

 This case does not involve the type of fundamental errors or compelling equities which would justify setting aside a confirmed sale. The only “mistake or like infirmity” pointed to by the appellees or the district court as supporting the vacating of the March 31 order is the trustee’s failure to discover and disclose $4,526.30 in unpaid back taxes owed on the property. We first note that appellees have failed to cite any cases holding or intimating that a trustee’s failure to discover unpaid back taxes constitutes sufficient error to vacate a confirmed sale. This type of error is different in nature from the error most often resulting in the setting aside of a confirmed sale — lack of notice, sée cases cited
 
 supra
 
 p. 551, or from other errors in the sale process causing a setting aside of a confirmed sale.
 
 [4]
 
 Indeed the error was immediately rectified by Nigro’s increasing his bid price to cover the loss to the estate.
 

 The magnitude of harm to creditors and a debtor’s estate resulting from defective notice is indeterminate in nature. Although post-confirmation bids sometimes give an indication of what amount could have been obtained at a properly conducted sale (see,
 
 e.g., In re Lamont, supra),
 
 the ultimate results of such a proper sale
 
 {e.g.,
 
 including a counteroffer from the party originally obtaining the property) cannot be known. A similar problem exists with other errors in sale procedures held to justify vacating a sale, such as unfairness towards bidders and sham bidders. See
 
 supra
 
 p.
 
 *554
 
 551. In contrast, the magnitude of harm caused by the mistake or infirmity here is known.
 

 The $4,526 mistake here is not an insignificant amount of money, especially in light of how little creditors often obtain in bankruptcy proceedings. Nevertheless, the size of the error in relation to the confirmed sale price, the uncertainty regarding the small amount of equity thought to be held by the estate in the property before the error was discovered, and the quick correction of the error all lead us to conclude that this case lacks the compelling equities or fundamental errors which would justify setting aside the confirmed sale and would shock the conscience of the court. See
 
 In re General Insecticide,
 
 403 F.2d at 620 (absence of notice, claims of conflict of interest and sale price of $380 while appraised value equals $550 did not shock conscience of court);
 
 In re Lamont,
 
 453 F.Supp. at 609-610 (defective notice and post-confirmation offer of approximately five times larger than confirmed sale price justified vacating confirmed sale and met the shock the conscience test). See also
 
 Mason,
 
 383 F.2d at 780 (discussed
 
 supra,
 
 note 2).
 

 The bankruptcy court referred to unspecified “surrounding circumstances” in its decision to vacate. Presumably the court was alluding to the appellees’ unwarranted complaints concerning improper notice and Nigro’s “preferred position.” The appel-lees also raised those points before the district court as supporting the bankruptcy court’s decision to vacate. But the district court ruled that any defect in notice could not serve as a basis for upholding the bankruptcy court’s decision. The court pointed out that Judge Eisen had expressly found adequate notice and held that there was sufficient evidence in the record to support the finding (p. 422 of the district court’s opinion).
 

 The charges of Nigro’s “preferred position” were found without merit by the district court. It concluded that Nigro’s March 31 offer was made on his own behalf and correctly observed that Judge Ei-sen did not rely on this argument in his decision to vacate nor did he even seriously discuss the charge (pp. 422-423 of the district court’s opinion). The district court was correct in rejecting these unfounded allegations as providing a sufficient basis to support the order to vacate.
 

 The only other justification which might potentially validate the decision to vacate is the failure of the trustee to discover unpaid back taxes, which we have already rejected as insufficient. The failure to discover unpaid back taxes earlier will result in lone creditor Liu receiving nothing from Nigro’s adjusted $124,275.29 offer (Appellees’ Br. 9) instead of an estimated $4,000 to $4,500. Yet if every error in the judicial sale process causing some inequity allowed the setting aside of confirmed sales, the principle of finality of judicial sales would be seriously undermined. Affirmance of the bankruptcy and district courts here would take us a long way down that road. Parties must be encouraged to make their highest bids at judicial sales.
 
 V/ebcor, supra.
 
 In the long run this policy benefits creditors as well as the bankruptcy estate by ensuring that the highest bids always are made in a timely fashion and are properly considered by the bankruptcy court.
 

 The district court’s order is vacated and the cause is remanded to it with instructions to vacate the bankruptcy court’s June 9 order and reinstate the original March 31 order allowing the sale of the property to Michael Nigro for $120,000 with a stipulation that there be no loss to the estate, presumably by his advancing $124,275.29 to the bankruptcy trustee for the property. Costs to be borne by appellees.
 

 [1]
 

 . The bankruptcy court never attempted to rest its decision to vacate on a grossly inadequate price theory nor did the appellees make such a claim to the district court (p. 421 of the district court opinion). The bankruptcy court appeared to recognize that it could not vacate the March 31 sale solely on the theory of a grossly inadequate price but instead believed that the price differential combined with other circumstances present in the case justified the decision (p. 17 of R. Item 13). See
 
 infra
 
 pp. 552-53.
 

 [2]
 

 . In
 
 Mason
 
 the Tenth Circuit reversed the bankruptcy court's refusal to set aside its confirmation of a sale and ordered the confirmed sale vacated. It is significant to note that the equities in
 
 Mason
 
 favoring vacating the sale were much more compelling than in the present case. In
 
 Mason
 
 the post-confirmation bid was $1,000 and the confirmed sale price was $650 (a 35% difference) and the creditors received no notice of the judicial sale, rendering it "wholly illusory” in the court’s words. 383 F.2d at 780.
 

 [3]
 

 . In the event that no substantially higher bid was entered, the bankruptcy court stated that it would confirm the original Nigro offer so long as Nigro agreed to increase his offer to avoid a loss to the estate on the sale (R. Item 12 at pp. 13 and 16). The bankruptcy judge was acting well within his discretion in allowing Nigro to increase his confirmed offer to compensate for slight errors in the bidding process due to the then unknown back taxes rather than vacating the sale and reopening the bidding entirely. Such a practice appears to be the proper method of correcting relatively minor errors that would have caused some detriment to the bankruptcy estate and creditors without trampling on the principle of finality of judicial sales. It cannot be said that the court would have refused to confirm the sale if it had known at the time that the sale for $120,000 would have resulted in a small net loss to the bankruptcy estate. When the bankruptcy judge conditioned the $120,000 sale on the payment of back taxes, Unity Masonic’s $125,000 offer (made known to the bankruptcy judge by the debtor’s April 8, 1983, motion to reopen and yielding $362 to estate and creditor) was in place, giving the court enough leverage over Nigro to cause him to increase his bid to $124,275.29 to cover previously unknown unpaid back taxes on the property.
 

 [4]
 

 . Even in cases cited as sanctioning the vacating of confirmed sales under a more lenient standard than the traditional one, see
 
 Cada,
 
 664 F.2d at 1162, the error involved was also that of defective notice (see
 
 In re Times Sales,
 
 445 F.2d at 386-387;
 
 In re Lamont,
 
 453 F.Supp. at 610) and here both courts held Unity Masonic had adequate notice.