950 F.2d 1318
 26 Collier Bankr.Cas.2d 152, Bankr. L. Rep. P 74,371
In the Matter of Gary J. IRVIN and Brenda Irvin, Debtors.
Gary J. IRVIN, Appellant,
v.
LINCOLN HERITAGE LIFE INSURANCE COMPANY, Appellee.
 No. 90-2619.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 17, 1991.
Decided Dec. 20, 1991.
 
 Stephen A. Tagge and David A. Rolf (argued), Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, Ill., for Lincoln Heritage Life Ins. Co., appellee.
 Gordon W. Gates (argued), Londrigan, Potter & Randle, Springfield, Ill., for Gary J. Irvin, debtor-appellant and Brenda L. Irvin, debtor.
 Before BAUER, Chief Judge, WOOD, Jr., and POSNER, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Gary and Brenda Irvin filed their joint petition for bankruptcy on December 31, 1980, seeking Chapter 13 relief; in 1987 it became a Chapter 7 proceeding. The bankruptcy court, Judge Coutrakon, entered an order approving the final accounting on April 8, 1988, and entered a final judgment concluding the proceeding on July 18, 1988. In the interim, Mr. Irvin, the appellant here, offered to purchase from the bankruptcy estate his state court suit against Lincoln Heritage Life Insurance Co. ("Lincoln Heritage"),[1] the appellee here. Mr. Irvin's suit, along with a counter-suit by Lincoln Heritage, had languished in the state trial court since it was filed July 18, 1980. It was viewed by the trustee Gary Krueger and his attorney John Germeraad as well as Judge Coutrakon as of little value; thus, the bankruptcy court approved its sale to Mr. Irvin for $250. Mr. Irvin then began to pursue his action against Lincoln Heritage with new vigor. Lincoln Heritage reacted by petitioning the bankruptcy court to reopen the bankruptcy proceeding and set aside the sale, claiming it had not received notice of the sale and had previously offered $7,500 to settle or purchase the suit. The bankruptcy court ordered the proceeding reopened and set aside the sale without stating its reasons. Mr. Irvin appealed to the district court which affirmed, and this appeal followed.
 
 JURISDICTION
 
 2
 The district court has "jurisdiction to hear appeals from final judgments, orders and decrees" of the bankruptcy court under 28 U.S.C. § 158(a), and this court in turn has "jurisdiction of appeals from all final decisions, judgments, orders, and decrees [of the district court] entered under" § 158(a). 28 U.S.C. § 158(a), (d). Initially, both parties relied exclusively on these two sections for appellate jurisdiction. At oral argument we questioned the finality of the order reopening the bankruptcy proceeding, although the parties did not.
 
 
 3
 The decision appealed must be final, but "the finality requirement is read much more flexibly in bankruptcy proceedings." In re Klein, 940 F.2d 1075, 1077 (7th Cir.1991) (citations omitted). In re Joslyn's Estate, 171 F.2d 159 (7th Cir.1948), is informative. There a bankruptcy judge granted a petition to reopen the proceeding and subsequently entered orders disposing of most matters. The case was then reassigned to a different judge who dismissed the original petition to reopen. On review, we found "the re-opening order was judicial, final and binding upon all parties." Id. at 164.
 
 
 4
 Here the bankruptcy court decided the substantive issue of whether to reopen the proceeding and set aside the confirmed sale. Were the order reopening the sale not reviewable at this juncture, any resale of the asset would be in considerable doubt. The district court would likely be asked not only to review the resale itself, but also to consider again whether the proceeding should have been reopened and the original sale set aside. We might then expect to be asked again to review the questions that are before us now. All the while the sale of the asset and the concomitant distribution of proceeds would remain uncertain. We find the order reopening the bankruptcy proceeding and setting aside the sale to be a final order in these circumstances, and, accordingly, we have jurisdiction.
 
 BACKGROUND
 
 5
 Six months before filing for bankruptcy, Mr. Irvin initiated a state-court suit for damages against Lincoln Heritage, his former employer. That suit then became an asset of the bankruptcy estate. Because it had filed a counter-suit against Mr. Irvin, Lincoln Heritage was considered a contingent creditor and was included in the debtors' mailing matrix. Thus, on December 1, 1983, Lincoln Heritage, among others, was mailed the court's Order-Notice Fixing Time For Filing Claims. Lincoln Heritage did not respond and has not subsequently advanced the proposition that it was or is a claimant.
 
 
 6
 On October 15, 1987, Mr. Irvin's attorney wrote the trustee's attorney, extending an offer to purchase the pending state-court suit, and enclosed Mr. Irvin's money order for $250. The attorney wrote:
 
 
 7
 As you and I have discussed, Mr. Irvin has always had faith in this litigation but it is speculative and, most importantly, expensive since a great deal of discovery will be required on insurance company records located in Arizona, and industry experts will undoubtedly be a necessary part of the litigation. With that in mind, its value to the bankruptcy estate may be nil, and it is for all of these reasons that this offer is published.
 
 
 8
 Apparently the trustee agreed; on October 22nd the trustee's attorney petitioned the bankruptcy court to approve the sale to Mr. Irvin of his own law suit. The court approved the sale the same day.
 
 
 9
 The bankruptcy proceeded toward its conclusion. The Notice of Hearing on Final Account of Trustee was mailed March 7, 1988; the final meeting of creditors took place April 7th; and the Order Approving Final Account and For Distribution was entered April 8th. The final decree was entered July 18, 1988, and the proceeding was closed.
 
 
 10
 Seven months later, however, Lincoln Heritage petitioned the bankruptcy court to reopen the estate and set aside the sale of the state-court law suit to Mr. Irvin. Paragraphs 5 and 6 of that motion state the two prongs of its complaint:
 
 
 11
 5. Lincoln Heritage Life Insurance Company, though a creditor of the estate and the defendant in the cause of action which was the subject of said sale, received no notice of the offer to purchase the asset or of the Petition for Approval of Sale, as required by section 363(b) of the Bankruptcy Code, 11 U.S.C. § 101 et. [sic ] seq., nor did Lincoln Heritage Life Insurance Company's attorney, R. Gerald Barris.
 
 
 12
 6. Prior to the time of the aforementioned Petition for Approval of Sale, negotiations for the settlement of the claim pending in Sangamon County Circuit Court occurred between Gary Krueger, as trustee for the bankrupt estate, and Lincoln Heritage Life Insurance Company, during which negotiations, Lincoln Heritage Life Insurance Company did offer $7,500.00 in settlement of said claim.
 
 
 13
 At the conclusion of a hearing on May 4th, the bankruptcy court granted Lincoln Heritage's motion without explanation. It reopened the proceeding and set aside the sale of the state-court suit. The record does not disclose what transpired at that hearing.
 
 
 14
 In his appeal to the district court Mr. Irvin claimed (1) Lincoln Heritage lacked standing to move either to reopen the estate or to set aside the sale, (2) there was insufficient evidence either to reopen the estate or to set aside the sale, (3) the motion was not timely, and (4) Lincoln Heritage was barred by laches. Lincoln Heritage disputed those contentions. The district court affirmed the bankruptcy court, finding that Lincoln Heritage was a party in interest, had standing, and was entitled to notice. The district court further held that the bankruptcy court could reopen the estate on its own motion, Lincoln Heritage was not barred by laches or want of timeliness, the evidence was sufficient, and, consequently, the bankruptcy court had not abused its discretion.
 
 
 15
 Except for laches, Mr. Irvin raises the same issues on appeal.
 
 ANALYSIS
 
 16
 Having once confirmed the sale of an estate asset, a bankruptcy court has less discretion to set that order aside than it originally had in granting or denying the order. In re Chung King, Inc., 753 F.2d 547, 549 (7th Cir.1985). In both instances the standard of appellate review is whether there was an abuse of discretion, but the abuse threshold is higher for the original order. "The bankruptcy court's confirmation or refusal to confirm a sale only will be overturned in extreme cases if there has been an abuse of discretion...." Id. at 549. There is, as the court noted, a strong policy of finality that "protects confirmed sales unless 'compelling equities' outweigh the interests in finality." Id. at 550 (citations omitted). Consequently, "[a] bankruptcy court may vacate a prior order confirming a sale ... only in very limited circumstances in the exercise of its powers as a court of equity." Id. at 549 (citations omitted; emphasis added). That equitable determination is largely for the bankruptcy court to make, but "the court's range of discretion on this matter is quite narrow." Id. at 550 (citing In re Webcor, 392 F.2d 893 (7th Cir.1968)).
 
 
 17
 Here the district court affirmed the order of the bankruptcy court reopening the estate and setting aside the confirmed sale of an estate asset. The bankruptcy court acted nearly 10 months after entering the final decree closing the proceeding and nearly 19 months after confirming the now-challenged sale. The actions of both courts are reviewed on the basis of an abuse of discretion.
 
 STANDING
 
 18
 Bankruptcy Rule 5010 identifies the parties who may move to reopen a bankruptcy estate under 11 U.S.C. § 350(b). "A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Bankr.Rule 5010, 11 U.S.C.A. Lincoln Heritage is not the debtor and acknowledges it is not a claimant. It cannot claim status as a creditor for two reasons. First, Lincoln Heritage asserts no right to a distribution. Second, the record contains no evidence presented to the bankruptcy court that it is a creditor. Lincoln Heritage must therefore look elsewhere, as did the district court, to establish standing as a party in interest.
 
 
 19
 The district court stated, "The Seventh Circuit Court of Appeals has held that where a bankruptcy court reopened a case, the proceeding was valid even though the petition was filed by a party who may not have been a creditor. In re Joslyn's [Estate], 171 F.2d 159, 164 (7th Cir.1948)." The court then found Lincoln Heritage was a party in interest and had the requisite standing.
 
 
 20
 We do not view Joslyn's Estate as authority for the general proposition that a non-creditor may be a party in interest. The Joslyn's Estate court, in pertinent part, stated:
 
 
 21
 [I]t is argued here, that the order re-opening the proceeding was reviewable by him[, the second bankruptcy judge,] because the application to re-open was instituted by the [Order of] Elks, which has been found not to be a creditor. We think this argument is without merit, and this irrespective of the status of the Elks as a creditor.... The re-opening order states that the cause came on to be heard upon the report of the Special Master and that the court does "order that this proceeding be and the same is hereby reopened." Thus, the order is not predicated upon the application of the Elks but upon the report made by the Special Master.
 
 
 22
 Joslyn's Estate, 171 F.2d at 164 (emphasis added). Therefore, Joslyn's Estate cannot stand broadly for the proposition that non-creditors have standing and can be a party in interest under the present Bankr.Rule 5010. Similarly, we cannot say that Joslyn's Estate held non-creditors do not have standing. Whether non-creditors have standing simply was not decided, and we need not decide that issue either.
 
 
 23
 Consequently, to achieve the status of party in interest Lincoln Heritage must rely specifically on its being the defendant in a bankrupt's suit which is property of the estate. Lincoln Heritage cites only Mason v. Ashback, 383 F.2d 779 (10th Cir.1967), as authority for this proposition. The successful appellant there was the defendant in a chose in action that had been listed as an asset only quite late in the proceeding. The Mason court did not address the issue of standing. Instead, it found the sale illusory, improvident and a fraud on the creditors where the record showed only the defendant and plaintiff had been notified of the sale, the defendant's larger but conditional bid had been rejected, and the defendant's subsequent, unconditional bid had been rejected as untimely. Thus, we do not view Mason as squarely standing for the proposition Lincoln Heritage asserts. Also, the record here, such as it is, does not show the deficiencies cited by the court in Mason. Accordingly, Lincoln Heritage cannot assert with confidence that its status as defendant in the state court suit necessarily grants standing.
 
 
 24
 Lastly, Lincoln Heritage asserts and the district court found the bankruptcy court had authority to reopen an estate sua sponte. That is of no avail. First, the bankruptcy court did not reopen the estate sua sponte; rather, it did so, as that court's order stated, "Upon Motion of Lincoln Heritage Life Insurance Company ... and over objection of the Debtor." Second, even when the bankruptcy court acts sua sponte, that action needs factual support or it would be an abuse of discretion.
 
 
 25
 Based on the facts of this case there is considerable doubt that Lincoln Heritage qualifies as a party in interest, but in this bankruptcy context we need not dispose of this appeal on that technical basis.
 
 NOTICE
 
 26
 Lincoln Heritage claims and the district court found it was entitled to notice of the sale of the estate asset. Subdivision (a) of Bankr.Rule 2002 requires notice of sale with certain exceptions which are specified in other subdivisions. "Except as provided in subdivisions (h), (i) and (k) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of ... (2) a proposed ... sale ... of property...." Bankr.Rule 2002(a), 11 U.S.C.A. Lincoln Heritage is not the debtor, trustee, creditor, or an indenture trustee. Consequently, Lincoln Heritage cannot claim entitlement to notice under Bankr.Rule 2002, but we need not view this case merely from that perspective. Even if Lincoln Heritage had received notice and appeared to present the case it later presented it would not have been adequate as we shall see.
 
 SUFFICIENCY OF THE EVIDENCE
 
 27
 The troubling and decisive thing about this case is that we can find absolutely no evidence of any kind in this record to support the claim of Lincoln Heritage that it made a bona fide offer to purchase the state suit for $7,500 or for any other amount. The bankruptcy court hearing on Lincoln Heritage's unverified motion to reopen and set aside the sale was not transcribed. If some evidence was offered we cannot find it. Lincoln Heritage has offered on appeal no record of any evidence it presented to the bankruptcy court or to the district court in support of its unverified motion. We find no testimony, affidavits, depositions, or documents. The record is absolutely devoid of evidence concerning the alleged offer of Lincoln Heritage.
 
 
 28
 In its briefs before this court and the district court Lincoln Heritage presented numerous, seemingly factual statements. It stated without citation to the record:
 
 
 29
 1. [T]he attorney for Lincoln Heritage entered into settlement discussions with the trustee, Mr. Krueger, and with Mr. Tim Moreland, the attorney for Gary Irvin in the above mentioned litigation. As a result of these discussions, and in an attempt to settle the above mentioned litigation, Lincoln Heritage offered to pay $7,500.00.
 
 
 30
 2. In its motion [to reopen], Lincoln Heritage alleged that ... if it had received the required notice, it would have brought to the attention of Mr. Germeraad[, the trustee's attorney,] its $7,500 offer of settlement.
 
 
 31
 The first statement is unverified and contested. Moreover, we are unable to find the second statement expressly alleged in the motion of Lincoln Heritage, and in any event it is unverified and speculative.
 
 
 32
 The argument portion of Lincoln Heritage's brief before the district court contains the following similar assertions of seeming fact:
 
 
 33
 A. [T]he bankrupt, knowing full well of Lincoln Heritage's offer to settle the case for at least ... $7,500 ...
 
 
 34
 B. [The debtor] characterized the asset as having no value, although he knew it to be worth ... $7,500....
 
 
 35
 C. [T]here was, in fact, an asset, worth at least ... [$7,500], which should have been administered for the benefit of the creditors.
 
 
 36
 D. The bankrupt knew that the asset was, in fact, worth at least ... [$7,500] on the day of confirmation [of the sale]....
 
 
 37
 Fundamentally the same arguments appear in the brief of Lincoln Heritage before this court. None of those assertions, at least as they relate to Lincoln Heritage's purported offer to settle or purchase Mr. Irvin's suit, are supported by evidence of any character.
 
 
 38
 The district court unfortunately appears to have been misled by those seemingly factual but unsupported statements in the brief of Lincoln Heritage. There was no hearing in the district court which might have clarified this situation. The district court's order, therefore, contains the following statements which read as if they were based on established fact:
 
 
 39
 1. In the case at bar, the debtor contributed $250.00 to the estate (for distribution to his creditors) in exchange for an asset which he knew was worth $7,500.00.
 
 
 40
 2. Later, when it became clear that the suit was actually worth at least $7,500 ...
 
 
 41
 3. [T]he other creditors certainly cannot be prejudiced by an increase in the value of the estate.
 
 
 42
 4. [A]t the time of the sale to the debtor for $250.00, he was aware of Lincoln Heritage's offer to settle the case for $7,500.00--30 times what he paid for the asset.
 
 
 43
 5. In addition, at the time of the sale Lincoln Heritage had offered thirty times the amount bid by the debtor for the asset. The gross inadequacy of price, coupled with the possible fraud ...
 
 
 44
 6. In addition, at the time of the sale to the debtor there was an offer by Lincoln Heritage to the trustee to buy the asset for thirty times what the debtor paid.
 
 
 45
 Because those statements of purported fact are not supported by the record before this court, we can only conclude they were not supported by the record before the district court.
 
 
 46
 This lack of evidence was candidly conceded at oral argument. In response to questions by this court, the attorney for Lincoln Heritage acknowledged the only record of the purported $7,500 offer available to the district court was the unverified motion of Lincoln Heritage. Nevertheless, we made our own fruitless examination of the record. Furthermore, Lincoln Heritage on this record has likewise failed to show Mr. Irvin was other than a purchaser in good faith. Section 363(m) of the Bankruptcy Code provides:
 
 
 47
 The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
 
 
 48
 11 U.S.C. § 363(m). This court has stated, "even a reversal on appeal of the order authorizing or confirming the sale will not affect the sale's validity if the buyer was acting in good faith and the sale was not stayed pending appeal." In re Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir.1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).
 
 
 49
 There is not only insufficient evidence, there is no evidence whatsoever to support the bankruptcy court's order reopening the estate and setting aside the sale of the estate asset. Therefore, it was error and an abuse of discretion for the district court to have affirmed the bankruptcy court. On the other hand, if what is claimed to have happened did in fact happen we would view this case differently. We cannot, however, approve what was done solely on the basis of faith in two experienced judges who may have known something not shared with us.
 
 CONCLUSION
 
 50
 The district court's order is reversed, and the cause is remanded with instructions to vacate the bankruptcy court's order of May 19, 1989, and to reinstate the original order of October 22, 1987, approving the sale of the suit, Gary J. Irvin v. Lincoln Heritage Life Insurance Company, 80-L-307, Sangamon County Circuit Court, to Gary Irvin for $250.
 
 
 51
 REVERSED and REMANDED.
 
 
 
 [1]
 Gary Irvin v. Lincoln Heritage Life Insurance Company, No. 80-L-307 (Cir.Ct., Sangamon Co., Ill., filed July 18, 1980)