71 F.3d 353
 64 USLW 2415, 28 Bankr.Ct.Dec. 297, Bankr.
L. Rep. P 76,724,
37 U.S.P.Q.2d 1200
 In re ALPEX COMPUTER CORPORATION, Debtor.
NINTENDO COMPANY, LTD.; Nintendo of America, Inc.,
Appellants/Cross-Appellees,
v.
Leslie A. PATTEN, Liquidating Trustee of Alpex Computer
Corporation, Appellee/Cross-Appellant.
 Nos. 94-1384, 94-1417.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 4, 1995.
 
 Thomas G. Gallatin, Jr. (John J. Kirby, Jr. and John T. Brennan, Mudge Rose Guthrie Alexander & Ferdon, New York City; and Jack L. Smith and Risa Wolf-Smith, Holland & Hart, Denver, Colorado, with him on the briefs), Mudge Rose Guthrie Alexander & Ferdon, New York City, for Appellants/Cross-Appellees.
 Brent R. Cohen (Thomas H. Young and JoAnn L. Vogt, with him on the briefs), Rothgerber, Appel, Powers & Johnson, Denver, Colorado, for Appellee/Cross Appellant.
 Before MOORE, Circuit Judge; McKAY, Senior Circuit Judge; and BRETT, Chief District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 On our checklist assuring the justiciability of claims, the question of standing is often dwarfed by the substantive issue we are urged to resolve. Nevertheless, this threshold question, St. Francis Regional Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1465 (10th Cir.1995), requires we ask, as Alpex Computer Corporation urges, whether Nintendo Company, Ltd. is the proper party to reopen a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code. Nintendo was neither a party in the confirmation proceedings nor was it dealt with in the plan. In this case, Nintendo nonetheless attempts to press its interpretation of that plan. Because its interest in another lawsuit cannot metamorphose Nintendo into a party in interest here, we hold Nintendo lacks standing under 11 U.S.C. Sec. 350(b) and dismiss.
 
 I. Background
 
 2
 Alpex was a publicly held corporation which invested in and developed various patents for computer-related technologies. Among those patents was U.S.Patent No 4,026,555 (the 555 patent), which Alpex alleged several companies including Nintendo Company Ltd. and Nintendo of America Inc. infringed. In 1983, however, before defending the 555 patent, Alpex filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In 1988, the Liquidating Trustee and the Official Committee of Unsecured Creditors filed an Amended Joint Plan of Reorganization (the Plan) and a revised Disclosure Statement. The bankruptcy court subsequently confirmed the Plan after an appropriate hearing.
 
 
 3
 Under the Plan, all of Alpex's assets were to be transferred to the Trustee for distribution to Alpex's creditors and stockholders according to the claims and interests of the five classes created.[1] It also authorized the Trustee to litigate the Alpex patent claims, specifically the patent infringement lawsuit filed in the Southern District of New York against Nintendo. Indeed, when the Plan was confirmed, the estate's only assets were potential recoveries in Alpex's 555 patent infringement suits against Coleco, Parker Brothers, and Nintendo. None of these companies had agreed to settle their alleged liabilities at that time.
 
 
 4
 In 1993, however, five years after confirmation of the Plan, Sega Enterprises purchased a worldwide, nonexclusive license from the Alpex estate in settlement of a similar patent infringement claim. The Trustee informed Nintendo of the settlement. Calculating the impact of that capital infusion into the estate, Nintendo filed a motion in the bankruptcy court which had confirmed the Plan to "Compel Liquidating Trustee to Comply with Chapter 11 Plan of Reorganization" and "to discontinue, with prejudice, litigation pending against Nintendo." In the motion, Nintendo offered $3.9 million in settlement of the patent infringement suit based on information in the Disclosure Statement[2] that the claims of stockholders totalled approximately $2.2 million. Added to Sega's settlement, Nintendo's $3.9 million offer would then fully satisfy shareholders and meet the Trustee's obligation "to comply with the Plan," Nintendo argued. Under this interpretation, the bankruptcy court should integrate the plain language of the Plan with that of the Disclosure Statement and compel the Trustee to place a cap on the recovery of Class 5 shareholders. Thus, Nintendo requested the bankruptcy court reopen the Plan for the single purpose of enforcing this interpretation. Further, Nintendo argued the Trustee's pursuing the patent litigation, given the cap on recovery, would either afford shareholders a windfall they never anticipated when the Plan was confirmed or necessitate abandonment.
 
 
 5
 The bankruptcy court denied the motion on November 4, 1993, after a hearing. It concluded neither the integration of the Disclosure Statement with the Plan nor the plain meaning of those provisions Nintendo challenged supported the theory the Plan's drafters intended to cap shareholder recovery at $2.2 million. Although the Trustee disputed Nintendo's standing to reopen the Plan, the bankruptcy court presumed jurisdiction, believing the issue was conceded once the court allowed Nintendo to appear and argue the motion.
 
 
 6
 On June 2, 1994, a New York jury found the Alpex 555 patent valid and Nintendo wilfully infringed the patent. The jury awarded Alpex $208.27 million in damages to which the United States District Court for the Southern District of New York later added $40 million in prejudgment interest and $4 million in damages for royalties from December 1, 1992, to May 31, 1994, the date the patent expired. Nintendo has appealed the judgment.
 
 
 7
 In July 1994, the United States District Court in Colorado affirmed the bankruptcy court on the merits while supplying jurisprudential support for Nintendo's standing to reopen. Under the authority of In re Kaiser Steel Corp., 998 F.2d 783, 788 (10th Cir.1993), the district court characterized Nintendo as "a debtor of a debtor" with "sufficient stake in the proceeding to qualify as a party in interest." Reasoning that a debtor is "anyone who may be compelled to pay a claim or demand; anyone liable on a claim, whether due or to become due," Black's Law Dictionary 364 (5th ed. 1979), the district court theorized Nintendo fits the definition because it "may be compelled to pay to the debtor (Alpex) whatever damages are determined with regard to the patent infringement claim."
 
 
 8
 The Trustee now appeals Nintendo's standing to reopen the Plan to compel him to cap shareholders' recovery, contending Nintendo is not a party in interest as circumscribed by Bankruptcy Rule 5010. In its cross-appeal, Nintendo asserts the Plan mandates a cap on shareholder recovery necessitating the Trustee's abandonment of the Nintendo lawsuit. Although the question of standing thwarts the bankruptcy court's jurisdiction and ends the inquiry, Nintendo's notion of capping shareholder recovery defies its straightforward language and plays havoc with the underlying structure of the confirmed Plan.II. Standing
 
 
 9
 Under 11 U.S.C. Sec. 350(b), "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Federal Rule of Bankruptcy Procedure 5010 specifies the parties who may invoke Sec. 350(b). It states: "A case may be reopened on motion of the debtor or other party in interest pursuant to Sec. 350(b) of the Code."
 
 
 10
 While the decision to reopen remains within the broad discretion of the bankruptcy court, 2 Collier on Bankruptcy p 350.03 (15th ed. 1995), it must be tethered to the parameters of Sec. 350(b), or it is an abuse of discretion. Because standing is "a prudential requirement," Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir.1995) (citation omitted), our review is de novo. Kaiser, 998 F.2d at 788.
 
 
 11
 Although 11 U.S.C. Sec. 1109(b) broadly defines a "party in interest,"[3] the phrase invites interpretation and "is generally understood to include all persons whose pecuniary interests are, directly affected by the bankruptcy proceedings." Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 756 (4th Cir.1993) (citations omitted). Indeed capitalizing on this concept, Nintendo urges, "Here, the Plan by its terms significantly impacts the prosecution of the Nintendo Lawsuit, which was pending at the time of confirmation and described in the Disclosure Statement.... Nintendo plainly has a significant economic interest in ensuring that the substituted plaintiff abides by the Plan and it only seeks an order requiring compliance with the Plan."
 
 
 12
 This expansive view notwithstanding, when we peruse the case law on standing under these circumstances, we find that concept implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code. For the debtor, that stake may be listing additional creditors, In re Scism, 41 B.R. 384 (Bankr.W.D.Okla.1984); avoiding a lien creditor, In re Ricks, 89 B.R. 73 (9th Cir. BAP 1988); or determining the dischargeability of a pre-petition debt, In re Hicks, 184 B.R. 954 (Bankr.C.D.Cal.1995). A creditor may seek to reopen to ask the bankruptcy court to administer discovered assets or determine nondischargeability. In re Banks-Davis, 148 B.R. 810 (Bankr.E.D.Va.1992). A trustee may seek to enforce the administration of a plan of reorganization or realize assets for the estate. In re Winebrenner, 170 B.R. 878 (Bankr.E.D.Va.1994).
 
 
 13
 In fact, while these three entities--debtor, creditor, trustee--are the only designated players under Sec. 350(b), there is disagreement in the case law over whether even a trustee is an appropriate party in interest to reopen. See In re Ayoub, 72 B.R. 808 (Bankr.M.D.Fla.1987); contra In re Stanke, 41 B.R. 379 (Bankr.W.D.Mo.1984). Otherwise, aside from peculiar facts that may align a case with these parameters, for example, In re Young, 70 B.R. 968 (Bankr.E.D.Pa.1987),[4] upon which Nintendo relies, the only divergence is a bankruptcy court's sua sponte reopening a case, In re Searles, 70 B.R. 266 (D.R.I.1987), nevertheless pinioned to a creditor's motion to clarify a consent order.
 
 
 14
 While Kaiser is not to the contrary, it is also not dispositive here as the district court believed. In Kaiser, Pittsburg and Midway Coal Mining Company (P & M) and Vermejo Mineral Corporation, two purchasers of properties owned by Kaiser Coal Corporation, the Chapter 11 debtor, filed objections to a settlement agreement Kaiser reached with Southwestern Public Service Company to resolve an adversary proceeding. The bankruptcy court denied the purchasers' standing upon finding neither party had an interest in the subject matter of the settlement agreement. The district court affirmed, and we agreed. We concluded P & M and Vermejo did not qualify as debtors of a debtor. Neither purchaser had to pay any additional money to Kaiser in their respective acquisition agreements on account of the settlement agreement, nor did either participate in the settlement agreement itself. Absent a specific financial interest, we rejected the purchasers' generalized stake based on their ownership of New Mexico coal property. We cautioned that while certain circumstances may qualify a debtor of a debtor as a party in interest, "[b]ankruptcy courts 'must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.' " Id. at 788 (quoting In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir.1985)).
 
 
 15
 In this case, Nintendo is neither a debtor, a creditor, nor a trustee. Indeed, when the Plan was confirmed, Nintendo received no notice of the Plan or its confirmation, nor was notice required.[5] At confirmation, Alpex held an unresolved claim against Nintendo; therefore, Nintendo's debt was inchoate at best. Although the district court defined Nintendo's status as that of a debtor of a debtor, its counsel has advised us his client is appealing the judgment in the patent litigation, which is tantamount to disclaiming Nintendo's debt in the first instance.
 
 
 16
 Nevertheless, in this appeal, Nintendo distinguishes it does not contend it has standing under Bankruptcy Rule 5010 or because it is a debtor of a debtor. Instead, Nintendo maintains it is a party aggrieved. Nintendo explains the effect of the decisions in the district and bankruptcy courts gives Alpex shareholders an unlimited right to pursue litigation against Nintendo for another ten years. Thus, its status is specifically affected by how the Trustee interprets and enforces the Plan, and it assuredly becomes a "party in interest" and a "debtor of a debtor." Under this view, then, if the Trustee's ability to pursue claims is circumscribed by the Plan, the putative claim against Nintendo endows it with standing to challenge the Plan.
 
 
 17
 We disagree. First, a plan, once confirmed, takes on a life of its own, ordering the parties to perform obligations to which each has agreed at the time the plan comes into existence. While an entity that owes a debt to the debtor may affect the plan in terms of infusing or depleting assets, that entity may challenge its status in an adversary proceeding incident to the plan. Once the plan is confirmed, however, the debtor of the debtor does not necessarily become clothed with the mantle of a party aggrieved to collaterally attack the plan.[6]
 
 
 18
 Nintendo cannot have it both ways, urging in New York it is not liable for the judgment and, here, it is a debtor of a debtor who "plainly has a significant economic interest in ensuring that the substituted plaintiff abides by the Plan and it only seeks an order requiring compliance with the Plan." Nor can Nintendo support its position with its cited authority.[7] Nintendo's obligation to the Plan arises from its litigation with Alpex in a separate civil action in New York. The obligation is not affected by the Plan but by the course of the New York proceedings. Nintendo's status as a defendant in a civil suit does not create standing here. Matter of Irvin, 950 F.2d 1318, 1321 (7th Cir.1991).
 
 
 19
 Nintendo's rights and liabilities derive from its stake in the 555 patent litigation with Alpex. It cannot claim a similar stake by implanting that status into a bankruptcy proceeding in which it has never participated. Consequently, Nintendo lacks standing to reopen the confirmed Alpex Plan to compel the Trustee to accept its settlement. Indeed, given the present stance of the patent litigation, Nintendo's urging the Trustee, representing Alpex shareholders, should reject the jury's judgment and embrace this settlement offer is remarkable. Attempting to enlist the bankruptcy court's imprimatur then is chutzpah.[8]
 
 
 20
 Despite this resolution, we note our examination of the Plan leads us into agreement with the bankruptcy court. No provisions, and most notably p 4.5 and the use of the terms "claim" and "interest," support Nintendo's interpretation. Nor is there merit to integrating the statements in the Disclosure Statement, estimating "disputed claims" at approximately $2,235,203.39, with the language of the Plan to establish the Plan intended to cap the Class 5 recovery. We are unimpressed by Nintendo's effort to place its interpretation into the historical context of 1989 shareholders who had no expectation of recouping their investments. While that may be so, the nature of a shareholder's interest is a risk taken. However bleak that risk may have looked in 1989, the investor's outlook has since been brightened by the New York judgment. Nintendo cannot use the bankruptcy court to relitigate its patent liability.
 
 
 21
 We, therefore, REVERSE the district court's conclusion Nintendo has standing in the bankruptcy court, and order it to DISMISS the case.
 
 
 
 *
 Honorable Thomas R. Brett, Chief Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 The five classes are: Class 1, administrative claims; Class 2, priority claims; Class 3, tax claims; Class 4, allowed general unsecured claims; and Class 5, allowed interest of stockholders
 
 
 [2]
 Prior to confirmation, the plan proponent must file and circulate a statement fairly describing the plan and its purposes. 11 U.S.C. Sec. 1125(b)
 
 
 [3]
 11 U.S.C. Sec. 1109(b) provides:
 A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.
 We stated in In re Kaiser Steel Corp., 998 F.2d 783, 788 (10th Cir.1993), citing 11 U.S.C. Sec. 102(3), "the word 'including' is not a limiting term, and therefore, 'party in interest' is not confined to the list of examples provided in section 1109(b)." Id. (citation omitted).
 
 
 [4]
 In that case, the court described the mother of a daughter who had inherited the most significant asset in what had been the debtor's estate as a representative of the successor-in-interest so that she could renegotiate the mortgage
 
 
 [5]
 In oral argument, Nintendo stated it became aware of the confirmation some time into its patent litigation with Alpex
 
 
 [6]
 In fact, we confine that garb to analyzing our appellate standing when we require an appellant to establish he is a "person aggrieved" by the challenged bankruptcy court order. In re American Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994). "The 'person aggrieved' test is meant to be a limitation on appellate standing to avoid 'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.' " Id. (quoting Holmes v. Silver Wings Aviation, Inc., 881 F.2d 939, 940 (10th Cir.1989)). The standing requirement is more stringent in bankruptcy appeals "than the 'case or controversy' standing requirement of Article III, which 'need not be financial and need only be fairly traceable to the alleged illegal action.' " Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir.1995) (quoting Kane v. Johns-Manville Corp., 843 F.2d 636, 642 n. 2 (2d Cir.1988)) (citations omitted)
 
 
 [7]
 Nintendo relies upon In re Young, 70 B.R. 968 (Bankr.E.D.Pa.1987), a Chapter 13 case, which, we noted, permitted a mother of the person who would inherit the estate's most valuable asset to renegotiate the mortgage on that property. In In re Wilson, 94 B.R. 886 (Bankr.E.D.Va.1989), the court refused to permit several Iran-Contra defendants to intervene to prevent the trustee from abandoning a civil suit. In In re Yoder, 158 B.R. 99 (Bankr.N.D.Ohio 1993), the court refused reopening to permit the purchaser of the debtor company to gain protection from products liability suits filed against the company. Finally, in In re Wolf Creek Valley Metro. Dist. No. IV, 138 B.R. 610 (D.Colo.1992), the court found the debtor of the Chapter 9 debtor has a special interest and definite relationship to the plan of reorganization
 
 
 [8]
 We add this instance to the catalog Judge Kozinski and Eugene Volokh have documented. See A. Kozinski & E. Volokh, Lawsuit, Shmawsuit, 103 Yale Law Journal 468 (1993)