**In re John FERNANDEZ, Debtor.**

**Bankruptcy No. LA97–25043TD.**

United States Bankruptcy Court,
C.D. California.

Aug. 29, 1997.

John Fernandez, Los Angeles, CA, in pro. per.

James J. Moneer, Law Offices of James J. Moneer, M.A., San Diego, CA, for movant.

Alexandria C. Phillips, Cameron & Dreyfuss, P.C., Santa Ana, CA, for respondent.

Nancy K. Curry, Los Angeles, CA, Chapter 13 Trustee.

## MEMORANDUM OF DECISION AND ORDER

THOMAS B. DONOVAN, Bankruptcy Judge.

**DOES THE BANKRUPTCY COURT HAVE THE RIGHT TO ENFORCE AN IN REM RELIEF FROM STAY ORDER ISSUED IN A PRIOR CASE, WITHOUT NOTICE TO THE DEBTOR IN A LATER CASE, AND WITHOUT THE BENEFIT OF A NEW MOTION FOR RELIEF FROM STAY IN THE DEBTOR'S LATER BANKRUPTCY CASE?**

Requests for in rem relief from the automatic stay are made frequently by secured creditors in our court. The facts in this case highlight the problem. The debtor's motion seeks an order vacating an order dismissing the debtor's chapter 13 case with a 180–day bar against refiling. The debtor wants to challenge his lender's foreclosure sale of the debtor's home. The foreclosure sale took place before this case was dismissed, after another judge issued an in rem relief from stay order in a related bankruptcy case, without notice to the debtor in the case now before the court. The foreclosing lender did not obtain a relief from stay order in the case now before this court. This memorandum sets forth the court's findings and conclusions on the questions presented by the debtor's motion:

1. Is a debtor entitled without question to the benefits of the automatic stay, even in the face of substantial evidence of abusive conduct by the debtor, his wife and a recent transferee (by gift) of an interest in the debtor's home, until the debtor's secured creditor obtains an order for relief from stay in the fifth bankruptcy case filed by the debtor, his wife and the debtor's transferee in less than eight months?

2. If not, may a secured creditor rely on an in rem order granting relief from stay with respect to the debtor's real property entered in a prior, related case filed by the debtor's transferee (by gift) of a shared interest in the property?

3. If so, may the creditor foreclose on the property before obtaining relief from stay in a fifth related bankruptcy case filed by the debtor seven days after the in rem order was issued by another bankruptcy judge in the transferee's prior bankruptcy case, without written notice to the debtor herein?

## FACTS

*Debtor's first case.* On June 1, 1992, John Fernandez (Debtor) and his wife Florencia Fernandez executed and delivered to BSC Mortgage Corporation a promissory note in the principal sum of $600,000. To secure the note, the Debtor and his wife executed and

delivered a deed of trust on their home, 4057 Sea View Avenue in Los Angeles. The note and beneficial interest in the deed of trust were assigned to Texas Commerce Bank. The Debtor and his wife defaulted, and on May 6, 1996, the bank recorded a notice of default and election to sell. On August 14, 1996, the bank recorded a notice of sale. On September 10, 1996, one day prior to the scheduled foreclosure sale, the Debtor filed a Chapter 13[1] petition, case number LA96–39761TD. On October 22, 1996, when the Debtor failed to appear at his § 341(a) meeting of creditors and to tender required payments to his chapter 13 trustee, the Debtor's bankruptcy case was dismissed with a 180–day bar against refiling.

*Debtor's wife's first and second cases.* On November 8, 1996, the Debtor's wife filed a chapter 13 petition, case number LA96–47196CA. On December 11, 1996, while the Debtor's wife's first bankruptcy case was pending, the Debtor's wife filed a second chapter 13 petition, case number SA96–14774JW. When the Debtor's wife failed to appear at her § 341(a) meeting of creditors and to tender to her chapter 13 trustee payments required, the Debtor's wife's first bankruptcy case was dismissed with a 180–day bar against refiling on December 31, 1996. The Debtor's wife's second bankruptcy was dismissed with a 180–day bar against refiling at her confirmation hearing on February 6, 1997.

*The Amador case.* On February 6, 1997, our Debtor transferred his interest in the Sea View property to himself and Belinda Amador, as joint tenants. The Debtor's grant deed for this transfer was recorded on February 7, 1997, and revealed that the transfer had been made as a gift.

On February 7, 1997, the same day she obtained her recorded interest in the Sea View property, Ms. Amador filed a chapter 7 petition, case number LA97–14711ES. Ms. Amador's bankruptcy schedules and statement of financial affairs do not reveal her interest in the Sea View property, and her petition states that her address is in San Dimas, California.

*The in rem order.* On April 14, 1997, on the bank's motion, but without written notice to our Debtor, an order terminating the automatic stay was entered in the *Amador* case. The order in the *Amador* case, in part, stated:

> IT IS FURTHER ORDERED that any relief from stay granted Movant herein be deemed binding and of full force and effect in this case and in any case filed by the Debtor or any other entity claiming an interest in the subject property within 180 days of the date of entry of this order granting relief from stay.

*Debtor's second case.* On April 21, 1997, our Debtor initiated his second chapter 13 petition, case number LA97–25043TD, by filing a bare bones "face sheet" petition unaccompanied by schedules, a statement of financial affairs or a proposed chapter 13 plan. Rules 1007(b) and (c), and 3015(b) allow our Debtor to file such other required papers up to 15 days after his petition was filed. On the day the Debtor's second petition was filed, the clerk sent the Debtor written notice of the deficiencies in the Debtor's papers. The clerk's order stated (as provided in paragraph 5A of Amended General Order No. 1, which is incorporated in Local Rule 180) that if the Debtor did not comply with the filing requirements, the court will: "Dismiss your case without further notice; and Consider this a willful failure to abide by a court order [which] ... means ... you will not be eligible to file another bankruptcy petition for 180 days...."

*The bank's foreclosure sale.* The bank did not obtain an order for relief from stay in our Debtor's second bankruptcy case, but on April 29, 1997, the bank initiated a foreclosure sale under its deed of trust on the Sea View property and was the successful bidder at the sale, although the bank had been notified by the Debtor on April 22, 1997, of the filing of the Debtor's second bankruptcy

---

1. All statutory, chapter and rule references herein, unless otherwise noted, are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036. References to the Local Rules and General Orders are to the rules and general orders of the United States Bankruptcy Court, Central District of California.

petition. The trustee's deed in favor of the bank was recorded on May 2, 1997.

On May 5, 1997, our Debtor filed his schedules and a statement of affairs but did not file a chapter 13 plan that met the requirements of § 1322 or Local Rule 180. On May 13, 1997, the Debtor's second chapter 13 case was dismissed by the Clerk of Court with a 180–day bar against refiling based on the Debtor's failure to file a chapter 13 plan.

*The motion now before the court.* Our Debtor, a non-attorney appearing in pro se, now seeks an order vacating the dismissal of his second bankruptcy case. As part of his motion, the Debtor asserts that the bank violated the stay the Debtor believes automatically protected his property interests after he filed his second bankruptcy petition. Our Debtor wants to sue the bank to set aside the foreclosure sale and for damages, punitive damages and attorneys' fees under § 362(h). While not expressed in so many words, our Debtor appears to be setting forth the claim that a denial of the relief he now requests would result in the loss of his home without notice and the opportunity for a hearing and, thus, that the *Amador* court order and the bank's foreclosure sale deprived him of his home without due process of law in violation of the Fifth or Fourteenth Amendments to the United States Constitution. In response to the Debtor's motion, the bank asserts that given (1) the history of bankruptcy filings by the Debtor, his wife and Ms. Amador and (2) the in rem relief from stay order entered in the bank's favor in the *Amador* case, there was no need for the bank to obtain an order for relief from the automatic stay in this case prior to the foreclosure sale.[2]

*Additional evidence revealed by the court's files.* In addition to the brief history outlined above, a review of the case files of these five related bankruptcies reveals a whole host of problems with the schedules and statements of financial affairs signed under oath by the Debtor, his wife, and Ms. Amador in those cases and with the debtors' chapter 13 plans.

*Debtor's first case.* In the Debtor's first chapter 13 case, LA96–39761TD, the Debtor values the Sea View property at $700,000 in schedule A and acknowledges secured debt of $795,000 against the property, as shown in schedule D. In schedule I, the Debtor claims net monthly income of $8,000, consisting of $5,500 in wages, salary and commissions and $3,100 from an unnamed relative. The Debtor's statement of financial affairs reveals a consistently, substantially lower rate of gross income over 1994, 1995 and 1996: $58,000, $60,000 and $44,000 (as of September 9, 1996), respectively. No alternate source of income, such as from a relative, is explained. The Debtor's chapter 13 plan reveals $38,660 in arrearages owed to two secured creditors.

*Debtor's wife's first case.* In the Debtor's wife's first chapter 13 case, LA96–47196CA, Mrs. Fernandez makes the same claims concerning family income as those contained in our Debtor's first bankruptcy papers: monthly net take home pay and other income of $8,000 shown on schedule I, and about the same three year income history over 1994, 1995 and 1996: $58,500, $60,000 and $44,000, respectively. A $3,000 monthly contribution from a relative is unexplained. Mrs. Fernandez' chapter 13 plan in her first case also suggests that she owes $38,660 in arrearages to two secured creditors on $795,000 in secured debt on the Sea View property described in schedule D. Mrs. Fernandez failed to reveal her husband's chapter 13 case filed just two months earlier, although this information is called for in a sworn statement required from all debtors by Local Rule 104.

---

**2.** On August 7, 1997, an attorney representing the Debtor filed a supplemental memorandum of law and new declarations of John Fernandez and Florencia Fernandez in support of the Debtor's motion. These papers are untimely. Local Rule 111(1)(f) requires that declarations, documentary evidence and points and authorities shall be served and filed not later than 21 days before the hearing date designated in the motion. The court has reviewed briefly these new papers and finds nothing in them that warrants any delay in the hearing on the Debtor's motion or that would alter the decision of the court expressed in this memorandum. While the new declarations attempt to point the finger of blame at two outsiders who may have taken advantage of the Debtor, it is apparent that they could not have done so without the Debtor's active complicity in their allegedly fraudulent schemes.

*Debtor's wife's second case.* In the Debtor's wife's second chapter 13 case, SA96–14774JW, Mrs. Fernandez generally repeats the financial information contained in the papers in her first case. Mrs. Fernandez acknowledges her interest in the Sea View property. She lists her address at a street address in Orange, California, rather than at the Sea View property in Los Angeles. Her 104 statement reveals nothing about any prior related bankruptcy case.

*The Amador case.* Ms. Amador's schedules and statements accompanying her chapter 7 petition, LA97–14711ES, disclose nothing about the Sea View property, on either the asset or the liability side of her schedules. Her statement of financial affairs reveals nothing whatsoever. Her 104 statement reveals no relationship to any other bankruptcy case, though apparently, from the evidence in the file of the case now before this court and the evidence filed in support of the bank's relief from stay motion in the *Amador* case, (1) our Debtor executed his grant deed on a gift basis in favor of himself and Belinda Amador on February 6, 1997, one day before Ms. Amador filed her bankruptcy petition; (2) the deed was recorded 17 days before Ms. Amador filed her schedules and statements; and (3) Ms. Amador and our Debtor appear to be affiliated with each other as that term is defined in § 101(2)(C) and (D).

*Debtor's second case.* Finally, in the schedules and statements filed by the Debtor in the present case, LA97–25045TD, the Debtor's 104 statement is grossly deficient, revealing only that on "9–10–96", [somewhere not described] a bankruptcy petition was filed [by an entity not described]. The Debtor's schedule A values the Sea View property at just $525,000, while the Debtor acknowledges in schedule D $897,686 of secured debt against the property. The Debtor inexplicably claims an exemption of $525,000 on the Sea View property, citing motor vehicle and household effects exemption statutes that do not apply to real property. In his latest papers, schedules I and J, our Debtor acknowledges that his gross monthly family income as a self-employed building contractor is $5,200, versus mortgage payments of $4,992 per month. In his statement of financial affairs, the Debtor now claims gross income of $166,000 and $65,100 in 1995 and 1996, respectively, from the business he now says is operated out of the Sea View property. He reveals nothing about the grant deed recorded on February 7, from himself to Belinda Amador and himself as joint tenants. His unsigned, so-called "payment plan" was not submitted on the court-approved form, woefully omits many subjects and details required by § 1322, is wholly unrealistic when viewed in light of the financial information in his schedules and statement, but states that he intends to make "Regular monthly payment amount plus $1,580.00 per month" [on his $767,968 debt to the bank]. A copy of the Debtor's "payment plan" is attached to this memorandum as an appendix.

*The court's basic factual conclusion.* In sum, the schedules, statements of financial affairs, Local Rule 104 statements and "plans" filed in these five related bankruptcy cases by the respective debtors, taken together with the facts that none of the debtors appeared at any § 341(a) meeting and that none of the chapter 13 debtors made any payment to his or her chapter 13 trustee, lead the court to the inference and conclusion that these three debtors were acting in concert with each other, not in an honest effort to reorganize their affairs or to seek an honorable discharge of debt, but, rather, simply to obstruct the bank's efforts to foreclose on the Sea View property.

## DISCUSSION

The Debtor brought this motion in order to vacate the dismissal of this case and to enable the Debtor to sue the bank to set aside the foreclosure sale on the Sea View property and for damages, punitive damages and attorneys' fees. The Debtor makes the following arguments in support of his motion:

1. The dismissal of the case should be vacated because the Clerk of Court had no authority to dismiss the Debtor's case simply because of the Debtor's oversight in failing to file a chapter 13 plan in the proper form;

2. The dismissal of the case should be vacated and an extension of time to file the chapter 13 plan should be granted because

the Debtor's failure to file a plan was the result of the Debtor's excusable neglect; and

3. The dismissal of the Debtor's case should be vacated because the bank violated the automatic stay by foreclosing on the Sea View property before obtaining relief from the automatic stay in this case.

■ *Did the Clerk of Court have the authority to dismiss the bankruptcy case?* In support of his argument that the Clerk of Court was not authorized to issue a dismissal order, the Debtor relies on Rule 5005(a). Rule 5005(a) states, in part, that "The clerk shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in the proper form...." The clerk here did not refuse to accept the Debtor's papers for filing. Rather, the clerk accepted the Debtor's papers for filing on April 21 and on May 5, and then dismissed the case on May 13 when the clerk determined that the Debtor failed to correct substantive problems regarding the content of the Debtor's papers. In exercising this authority, the clerk followed well-established, appropriate procedures.

Amended General Order No. 1, incorporated in Local Rule 180, provides in relevant part: "If the Chapter 13 schedules, statement and plan are not filed with the petition, the Clerk shall ... issue an order notifying the debtor that, if the plan, schedules and statement are not filed within 15 days, the case shall be dismissed at that time with a 180–day bar to refiling." The clerk in this case furnished such a written order to the Debtor on the day the Debtor filed his second chapter 13 case. The clerk's order contained a clear and unmistakable notice to the Debtor of the consequences of a failure to comply with the filing requirements on a timely basis. General Order No. 96–06 explicitly grants to the Clerk of Court the authority to dismiss bankruptcy cases when a debtor does not comply with the filing requirements after a written warning. The warning issued in this case was clear. The clerk's dismissal order was consistent with the authority granted in General Order No. 96–06. The clerk's order did not transgress Rule 5005(a). The clerk did not refuse to accept the Debtor's papers for filing. Rather, the clerk dismissed the case more than three weeks after it had been filed because the Debtor failed to file on a timely basis anything that reasonably could qualify as a valid chapter 13 plan. The requirements for a chapter 13 plan are spelled out in § 1322 and Local Rule 180. The Debtor's papers did not satisfy those requirements or even remotely come close to doing so. The clerk's dismissal order in this case was not imposed on the Debtor unfairly, was not unfair to the Debtor, and was a proper order under the circumstances.

■ *Was the Debtor's failure to file a plan excusable?* The Debtor argues that the order dismissing his case should be vacated to give him the opportunity to file a chapter 13 plan now because Rule 9006(b)(1) permits "the court for cause shown ... in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act [timely] was the result of excusable neglect." Excusable neglect also is a basis for relief from an order of the court under Rule 60 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024. For example, the Supreme Court has held that the bankruptcy court should accept a late filed claim where, because of problems with a confusing form of notice to creditors of the claims filing deadline, a finding was required that under the circumstances of that case neglect was excusable. *See Pioneer Investment Services Co. v. Brunswick Associates,* 507 U.S. 380, 398–400, 113 S.Ct. 1489, 1500, 123 L.Ed.2d 74 (1993). The Debtor contends here that his failure to file a plan in acceptable form was the result of the mistake or carelessness of a paralegal and was beyond the Debtor's control and, thus, should be excusable.

This argument is unpersuasive. The Debtor provides no convincing evidence that a paralegal's lack of experience led to the Debtor's failure to file a plan. So far as the record shows, any person assisting the Debtor with his bankruptcy petition and papers was not identified in those papers, was the Debtor's agent and was unlicensed, apparently, to practice law. The Debtor has offered

no evidence that persuades the court that the Debtor's reliance on any such person was reasonable or justified. There is no reasonable basis in the record to conclude that the Debtor's failure to follow the rules in this instance is excusable. Rather, the record in these five related bankruptcy cases (of which this court takes judicial notice) leads the court to the more logical conclusion that the Debtor, desperate to save his home, was prepared to sign any document and to file, or encourage the filing of, as many bankruptcy petitions as necessary in his attempt to stave off the bank's foreclosure sale resulting from the Debtor's early 1996 default in the payment of his obligations to the bank. The court concludes that under the circumstances of this case, the shortcomings in the Debtor's papers in his second chapter 13 case are not the result of excusable neglect and that there is no basis, under Rule 9006(b)(1), Rule 9024, or otherwise, justifying relief to the Debtor from the order dismissing the Debtor's second bankruptcy case.

*What standing does the Debtor have to complain about the bank's conduct?* Before addressing the Debtor's third argument, that the Debtor is entitled to additional relief because the bank has violated the automatic stay, the court must evaluate the Debtor's standing before this court. In this regard it should be noted that the bankruptcy process is designed to relieve an honest debtor from oppressive indebtedness to permit the debtor to make a fresh start in life. *Williams v. U.S. Fidelity & Guaranty Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 289–90, 59 L.Ed. 713 (1915). The right of a debtor to a fresh start depends upon the debtor's honest disclosure. *See In re Kestell,* 99 F.3d 146, 149–50 (4th Cir.1996).

■ At the same time, in order to determine whether our Debtor's conduct justifies this court's denial of the Debtor's motion to vacate the order dismissing our Debtor's bankruptcy case, the court must consider and implement carefully the authority granted to it by § 105(a), which provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

*See Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Supreme Court has noted that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with matters connected with bankruptcy estates. *See id.* at 307–09, 115 S.Ct. at 1499. Bankruptcy courts traditionally have used their equitable power in a manner that prevents abuse of the bankruptcy process and ensures that a case is commenced in "good faith" to reflect the intended policies of the Bankruptcy Code. *See, e.g.,* 2 *Collier on Bankruptcy* ¶ 301.04[1], (15th Ed. Revised 1996). It seems to this court that § 105(a) rather unambiguously grants to this court the authority to dismiss a bankruptcy petition or to decline the Debtor's request to vacate the order dismissing the case if the record before the court establishes that the Debtor filed the petition in bad faith. *See In re Van Owen Car Wash. Inc.,* 82 B.R. 671, 674 (Bankr.C.D.Cal.1988). The bigger issue is whether the facts in this case warrant the use of that power in this instance.

■ Although multiple filings are not per se illegal, the Ninth Circuit has recognized that in some circumstances, "unwary creditors may suffer losses at the hands of debtors who abuse the multiple filing opportunities provided by Chapter 13." *In re Nash,* 765 F.2d 1410, 1414 (9th Cir.1985). Thus, for example, "a debtor's history of filings and dismissals is relevant in determining whether a plan has been proposed in good faith." *Id.* at 1415. The Ninth Circuit Bankruptcy Appellate Panel has noted that under some circumstances bad faith may be established by evidence that a debtor has filed successive bankruptcy petitions primarily to gain the benefit of successive automatic stays; *In re Can–Alta Props., Ltd.,* 87 B.R. 89, 91 (9th Cir. BAP 1988). The Panel also noted that bankruptcy courts generally take

several factors into account before deciding that a petitioning debtor was lacking in good faith. *Id.* Indications of bad faith noted in an earlier bankruptcy court decision included findings such as the following: (1) transfers of distressed property to a new entity; (2) transfers occurring within a close proximity to the bankruptcy filing; (3) transfers without consideration; and (4) the absence of means, other than the transferred property, for the debtor to service the debt on the property. *In re Yukon Enter., Inc.,* 39 B.R. 919, 921 (Bankr.C.D.Cal.1984). These suspicious factors are present here, conspicuously, coupled with several additional suspicious factors.

■ After the Debtor's first bankruptcy case was dismissed, and after the Debtor wife's two bankruptcy cases were dismissed, the Debtor transferred the Sea View Property to Ms. Amador and himself as joint tenants. On the same day, Ms. Amador filed her chapter 7 petition. The transfer of a partial interest in the Sea View property to Ms. Amador was recorded as a gift. Our Debtor, his wife, and Ms. Amador did not reveal in their schedules any significant assets other than the Sea View property. Ms. Amador even concealed from view her interest in the Sea View property. Unsecured debt listed in the schedules associated with these five cases, although not insignificant, is relatively small in comparison to the debt secured by the Sea View property. More importantly, no payment on account of unsecured debt was contemplated or possible under the conditions described in any of the debtors' chapter 13 papers. Moreover, the debtors in these five related bankruptcies failed to prepare honest schedules, statements of financial affairs, 104 statements and plans. None of the debtors ever appeared at any § 341(a) meeting or made any payment to a chapter 13 trustee. These factors lead the court to the conclusion that these three debtors were acting in concert with each other, not in an honest effort to reorganize their secured debt, to save their home or to seek a discharge of debt, but rather that these debtors acted surreptitiously to delay and frustrate the bank's foreclosure efforts with respect to the Sea View property. More specifically, in response to the Debtor's

motion now before the court, the record establishes that the Debtor has abused the bankruptcy processes blatantly.

The words of Judge William A. King in the case of *In re Bystrek,* 17 B.R. 894 (Bankr. E.D.Pa.1982), come to mind:

> The troubling aspect of this case is that debtor's counsel seems to believe that Bankruptcy Court is a legal playground where the debtor can indulge in an elaborate game of catch-me-if-you-can with her creditors. Such is not the case. Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility.... The game attempted in this case cannot be permitted.

*Id.* at 895. The court agrees with the sentiments expressed by Judge King and believes that they apply to the case now before this court.

■ *Does this court have the power to enforce the in rem order issued in a prior case as it affects our Debtor?* Now we come to a hard question posed by our Debtor's motion: Even though the court has concluded that the Debtor's second bankruptcy case was filed in bad faith, was the Debtor nevertheless entitled unequivocally to the benefits of the automatic stay provided by § 362(a) until such time as the bank obtains an order from this court for relief from the stay, after notice to the Debtor in this case and an opportunity for our Debtor to be heard on the question? The court does not think so, but the question is not an easy one to resolve in light of the importance of the question of due process. Due process requires that parties in interest be given an opportunity to be heard after appropriate notice before they may be bound by a court order. As the Supreme Court said in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford

them an opportunity to present their objections.

This basic concept is embodied prominently in the Bankruptcy Code in § 362(d) permitting relief from the automatic stay "On request of a party in interest ... after notice and a hearing...." This concept is tempered, however, by § 102(1)(A) stating that the phrase "after notice and a hearing" as used in the Bankruptcy Code means "after such notice as is appropriate in the particular circumstances."

The term "in rem" is a complex and elusive one. In *Hanson v. Denckla*, 357 U.S. 235, 244–46, n. 12, 78 S.Ct. 1228, 1235, n. 12, 2 L.Ed.2d 1283 (1958), the Supreme Court described the distinction between in personam and in rem jurisdiction drawn by the Restatement of Judgments:

> A judgment in personam imposes a personal liability or obligation on one person in favor of another. A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him.

As the Supreme Court noted in *Mullane,*

> Distinctions between actions in rem and those in personam are ancient and originally expressed in procedural terms what seems really to have been a distinction in the substantive [Roman] law of property under a system quite unlike our own. The legal recognition and rise in economic importance of incorporeal or intangible forms of property have upset the ancient simplicity of property law and the clarity of its distinctions, while new forms of proceedings have confused the old procedural classification. American courts have sometimes classed certain actions as in rem because personal service of process was not required, and at other times have held personal service of process not required

because the action was in rem. Judicial proceedings to settle fiduciary accounts have been sometimes termed in rem, or more indefinitely quasi in rem, or more vaguely still, 'in the nature of a proceeding in rem.'

*Mullane,* 339 U.S. at 312, 70 S.Ct. at 656. [Citations omitted.]

In *Hanson v. Denckla,* the Supreme Court, in a 5—4 decision, concluded that a Florida court lacked authority to dispose of the property interests at issue there with this language:

> Prior to the Fourteenth Amendment an exercise of jurisdiction over persons or property outside the forum State was thought to be an absolute nullity, but the matter remained a question of state law over which this Court exercised no authority. With the adoption of that Amendment, any judgment purporting to bind the person of a defendant over whom the court had not acquired in personam jurisdiction was void within the State as well as without. Nearly a century has passed without this Court being called upon to apply that principle to an in rem judgment dealing with property outside the forum State. The invalidity of such a judgment within the forum State seems to have been assumed—and with good reason. Since a State is forbidden to enter a judgment attempting to bind a person over whom it has no jurisdiction, it has even less right to enter a judgment purporting to extinguish the interest of such a person in property over which the court has no jurisdiction. Therefore, so far as it purports to rest upon jurisdiction over the trust assets, the judgment of the Florida court cannot be sustained.

*Hanson,* 357 U.S. at 249–50, 78 S.Ct. at 1237–38. [Citations and footnotes omitted.] The same principle ordinarily would seem to apply under the Fifth Amendment to the United States Constitution to the order of the bankruptcy court in the *Amador* case as it might affect our Debtor in the case now before this court, given the absence of notice to our Debtor, either (1) of the motion for relief from stay in the *Amador* case or, (2) of a motion for relief from stay in this case.

In *In re Snow,* 201 B.R. 968, 971 (Bankr. C.D.Cal.1996), Judge Bufford fashioned his order for relief from the automatic stay in the form of an equitable servitude, applying to subsequent purchasers for a 180–day period, to deal with a creditor's request for in rem relief. At the same time, Judge Bufford declined to extend the effect of his order to co-owners who were not before the court. *Id.*

The practical and very real problem faced by the bank after receiving the in rem order in the *Amador* case is (1) whether it has the right to foreclose in reliance on the in rem order or (2) whether, to avoid exposure to liability under § 362(h) to another debtor in a later bankruptcy case, the bank first must seek and obtain another order for relief from stay in every later bankruptcy case, after notice to every later debtor, before foreclosing. The Bankruptcy Code provides no easy, sure answer. Nothing in the Code solves the bank's dilemma. To the contrary, § 362(a) always puts the bank in jeopardy if it chooses to foreclose before obtaining a new order from relief from stay in every bankruptcy case affecting the property that represents the bank's collateral.

As noted above, the court also is very mindful of the fact that here we are dealing with two separate problems that limit the efficacy of in rem relief. First, our Debtor was not given written notice by the bank of the bank's relief from stay motion in the *Amador* case. Secondly, the bank did not file and serve a relief from stay motion in the case now before the court.

Notwithstanding, this court believes that in the circumstances presented by this case it is appropriate to go one step further than Judge Bufford went in *Snow.* This court's conclusion follows from the finding that our Debtor and those associated with him have abused the bankruptcy laws in order to obstruct foreclosure on the Sea View property. The fact that Ms. Amador filed a bankruptcy petition on the same day the Debtor transferred the Sea View property to himself and Ms. Amador as joint tenants leads this court to infer that the Debtor acted in concert with Ms. Amador, and, therefore, should be charged, constructively, with receiving suffi-cient notice of the bank's in rem relief from stay motion in the Amador case. Thus, the in rem order issued in the *Amador* case should be enforceable against the Debtor in the context of the case now before this court, even without a further motion for relief from stay in this case.

■ While notice and an opportunity to be heard are fundamental to our concept of justice, there may come a point when common sense and equitable principles should step in to limit a debtor's right to the protections afforded by the automatic stay of § 362(a). *But see Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). This court is mindful of Justice Douglas' admonition in his decision for the majority in *Bank of Marin* that a court should not read or apply the words of the bankruptcy law mechanically or without regard for the requirement of reasonable notice before the party affected is deprived of his, her or its property rights. *Id.* Mindful of the normal constitutional necessity for reasonable notice, common sense and those equitable principles suggest to this court that there should be a corollary to the rule announced in *Bank of Marin,* that the authority granted by § 105(a) in appropriate circumstances may override the need for notice and hearing where necessary to protect the integrity of the bankruptcy process.

Based on the history of multiple filings and the bad faith of our Debtor and those associated with him, the court concludes that our Debtor is not entitled in this fifth related bankruptcy case to enjoy again the benefits of the automatic stay and that here, the bank was not required to obtain yet another order for relief from the stay before foreclosing on the Sea View property. Otherwise, the bankruptcy process becomes a farce and parties to bankruptcy cases pursuing legitimate interests before the court will be put to a seemingly endless round of motions, petitions and more motions, based solely on a Lewis Carroll view of the workings of the automatic stay and the requirements of due process. At some point, a debtor's bad faith conduct should allow a court to dispense with further notice and to conclude that a debtor's conduct has deprived the debtor of the right to

invoke yet another automatic stay. This court believes that point was reached in this case.

The court concludes that the in rem relief from stay order entered in the prior *Amador* bankruptcy case is enforceable against the Debtor, even though the Debtor in this case was not afforded written notice of the bank's motion for relief from stay in the *Amador* case and no relief from stay motion was filed and served in this case. The court does not reach this conclusion lightly or without a careful examination of the record. The Debtor has failed to convince this court that he deserves another opportunity to challenge the bank's foreclosure sale in further proceedings before this court. Put another way, at this point the burden of proof that he has been treated unfairly has shifted to the Debtor, and the Debtor has failed to meet his burden.

■ *The Debtor's motion should be denied.* Based on the foregoing, the court concludes that § 105(a) authorizes this court to take appropriate action in order to prevent abuse of the bankruptcy process. The court believes this decision is necessary under the circumstances to preserve the integrity of the bankruptcy process and that the Debtor's conduct should disqualify him from benefitting from the automatic stay that ordinarily would apply in this case. Therefore, his motion to vacate the order dismissing the Debtor's chapter 13 case should be denied.

## CONCLUSION

The Debtor's motion to vacate the order dismissing this case is denied.

This memorandum of decision constitutes the court's findings of fact and conclusions of law.

*ORDER*

IT IS SO ORDERED.

## APPENDIX
### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| NAME/ADDRESS OF DEBTOR | ACCOUNT NUMBER | BALANCE | PAYMENT PLAN |
| --- | --- | --- | --- |
| MBNA American Bank C/O Rory Clark 20300 Ventura Blvd. Woodland Hills, CA 91364 | 74990999190385 | $25,065.00 | $20.00/month |
| Ford Citibank Visa P.O; Box 6100 The Lakes, NV 88901–6100 | 4128002673999319 | $5,628.00 | $15.00/month |
| Chase Manhattan Bank Great lakes Collection 45 Oak Street Buffalo, New York 14203–2697 | 00426628586908 | $4,578.00 | $15.00/month |
| Citibank Preferred General American Credit 5933 Coronado Lane Pleasanton, CA 94588 | 4271382000474391 | $5,175.00 | $15.00/month |
| Household Credit Serv. North American Capital 45 Oak Street Buffalo, New York 14203–2697 | 317342016022200 | $5,030.00 | $15.00/month |
| Isabel Fernandez and Dennis Eilertson 7402 3rd Street | none | $90,496.00 | No payment plan because of prior arrangement |

Downey, CA 90241

| | | | |
|---|---|---|---|
| Transamerica Financial<br>8255 Firestone Blvd.<br>Suite 250<br>Downey, CA 90241 | none | $22,722.00 | $25.00/month |
| GE Capital<br>Texas Commerce Bank, N.A.<br>C/O GE Capital Mortgage Trust<br>4680 Hallmark Parkway<br>San Bernardino, CA 92407–1863 | 9591264 | $767,968.00 | Regular monthly<br>payment amount<br>plus $1,580.00<br>per month |
| Larry Fabuzi, Esq.<br>3701 W. 6th Street<br>Los Angeles, CA 90020 | none | $16,500.00 | No payment plan<br>because of prior<br>arrangement |
| Law Offices of Allen Shugar<br>2029 Century Park East<br>Suite 1240<br>Los Angeles, CA 90067 | none | $2,000.00 | $10.00/month |