NOT FOR PUBLICATION



**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1584-KiClD |
| GAREGIN PAPAZOV, | Bk. No.   2:10-38924-RN |
| Debtor. | |
| ELIZABETH GOLDENBERG, TRUSTEE OF THE GOLDENBERG FAMILY TRUST, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | |
| Appellee. | |

Argued and Submitted on May 16, 2013,
at Pasadena, California

Filed - May 30, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard M. Neiter, Bankruptcy Judge, Presiding

Appearances:    Russell F. Behjatnia, Esq. of Law Office of Russell
F. Behjatnia argued for appellant, Elizabeth
Goldenberg, Trustee of the Goldenberg Family Trust;
Robert J. Jackson, Esq. of Robert J. Jackson &
Associates, Inc. argued for appellee, Deutsche Bank
National Trust Company.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Before: KIRSCHER, CLEMENT[2] and DUNN, Bankruptcy Judges.

Appellant, Elizabeth Goldenberg ("Goldenberg"), trustee of the Goldenberg Family Trust ("Trust"), appeals two orders from the bankruptcy court denying her motion to reopen debtor's chapter 7[3] bankruptcy case and denying her injunctive relief. Because Goldenberg lacked standing to reopen the case and file this appeal, we DISMISS. Alternatively, we AFFIRM.[4]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events leading to the motion to reopen and request for injunctive relief**

On November 17, 2006, Irina Lukashin ("Lukashin") obtained a loan for $1,680,000 from Money Warehouse, Inc. for real property located on Grand View Drive in Los Angeles, California ("Grand View Property"). As security for the loan, Lukashin executed a promissory note ("Note") and first deed of trust ("DOT") in favor of the lender.

On June 27, 2008, Lukashin, without the consent of the lender and without the payment of any consideration, executed a quitclaim

---

[2] Hon. Fredrick E. Clement, Bankruptcy Judge for the Eastern District of California, sitting by designation.

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] To fully understand the background of this appeal, we have reviewed certain items on the bankruptcy court's electronic docket of which we take judicial notice. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)(appellate court can take judicial notice of documents filed with the bankruptcy court).

-2-

deed purporting to convey a 100% ownership interest in the Grand View Property to the Trust. The quitclaim deed was recorded on July 8, 2008. Nothing in the record suggests that the Trust did not take the Grand View Property subject to the debt.

Despite Lukashin's transfer of her interest in the Grand View Property, she subsequently executed a deed of trust and assignment of rents on October 18, 2009, to Garegin Papazov ("Papazov") for the purpose of securing payment of a loan in the amount of $30,000 ("Papazov DOT"). The Papazov DOT was recorded on July 13, 2010.

Prior to Lukashin's purported transfer and assignment to Papazov, neither Lukashin, Goldenberg nor the Trust (nor anyone else) made any further payments on the Note after July 2, 2008. A notice of default was recorded on September 2, 2008. A notice of sale was recorded on January 13, 2010, with an initial foreclosure date set for February 1, 2010.

On May 24, 2010, the Note and DOT were assigned to appellee, Deutsche Bank National Trust Company as Trustee ("Deutsche Bank"). The assignment was recorded on July 8, 2010.

The day after the Papazov DOT was recorded, Papazov filed a chapter 7 bankruptcy case on July 14, 2010. In his Schedule B, Papazov identified a personal property interest in a "Real Estate Promissory Note" in the amount of $30,000, which appears to reflect his purported security interest in the Grand View Property.

On November 22, 2010, Deutsche Bank moved for relief from stay in Papazov's bankruptcy case to proceed with its foreclosure rights on the Grand View Property. Deutsche Bank requested relief

-3-

under § 362(d)(1), (d)(2) and (d)(4).[5]  In support of the motion, Deutsche Bank offered copies of the Note, the DOT, the assignment, the Papazov DOT and a broker's appraisal.

Deutsche Bank also offered the declaration of Paul Lacombe ("Lacombe"), employee of loan servicer American Home Mortgage Servicing, Inc. ("AHMSI").  Lacombe stated that Papazov was the "sole owner" of the Grand View Property and that he had acquired this interest by "grant deed" on July 13, 2010.[6]  Lacombe further stated that prepetition arrears on the Note totaled $143,442.36, postpetition arrears totaled $11,054.94, and that Deutsche Bank's claim as of September 21, 2010, was $2,110,488.44 (not including costs of sale), which exceeded the property's fair market value of $1,800,000 to $2,000,000.  In an attached "continuation sheet," Lacombe stated that Papazov's bankruptcy case had been filed in bad faith to delay, hinder, or defraud movant based on the following:

> Unauthorized Transfers: On or about July 13, 2010, an unauthorized Grant Deed in violation of the Mortgagor's original Deed of Trust was recorded in the LOS ANGELES County Recorder's office whereby Mortgagor Irina Lukashin purported to transfer a 100% interest in the property to Garegin Papazov as a gift for no consideration or for nominal consideration. The Grant Deed was executed on July 13, 2010 without the knowledge or consent of the Movant.  A true and correct copy of the unauthorized Grant Deed is attached hereto as Exhibit "5" and incorporated herein by reference.

---

[5] Although the box for § 362(d)(4) on page 4 of motion Form 4001-1M.RP was not checked, Deutsche Bank contended that the transfer to Papazov was unauthorized and done in bad faith to delay, hinder or defraud, as explained further in the supporting declaration from Paul Lacombe.

[6] In actuality, Papazov held only a purported security interest against the Grand View Property.  No such "grant deed" exists.

-4-

Attached to the motion was also Deutsche Bank's request for "extraordinary relief," motion Form 4001-1M.ER. Deutsche Bank checked the boxes requesting the following extraordinary relief:

1.  That the Order be binding and effective in any bankruptcy case commenced by or against the above-named Debtor(s) for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

2.  That the Order be binding and effective in any bankruptcy case commenced by or against any successors, transferees, or assignees of the above-named Debtor(s) for a period of 180 days from the hearing of this Motion upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

3.  That the Order be binding and effective in any bankruptcy case commenced by or against any Debtor(s) who claim(s) any interest in the Property for a period of 180 days from the hearing of this Motion upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

4.  That the Order be binding and effective in any future bankruptcy case, no matter who the Debtor(s) may be upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

7.  Other (specify): If recorded in compliance with applicable state laws governing notices of interests or liens in the Property, this Order is binding and effective under 11 U.S.C. § 362(d)(4)(A) and (B) in any other bankruptcy case purporting to affect the Property filed not later than two (2) years after the date of entry of this Order, except that a debtor in a subsequent bankruptcy case may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this Order for indexing and recording.

A hearing was held on Deutsche Bank's stay relief motion on December 14, 2010. It was unopposed.

On December 21, 2010, the bankruptcy court entered an order granting Deutsche Bank relief from stay under § 362(d)(1) and (d)(2), and for in rem relief under § 362(d)(4) ("Stay Relief

-5-

Order"). Despite Deutsche Bank's extensive request for extraordinary relief, the bankruptcy court granted it only as to Papazov and any of his "successors, transferees or assignees" for 180 days from the hearing on the motion and upon recording of the order - i.e., extraordinary relief nos. 1 & 2. The Stay Relief Order was not binding in "any future bankruptcy case" involving "any debtor" who claimed any interest in the Grand View Property. Deutsche Bank recorded the Stay Relief Order on January 7, 2011.

Upon the chapter 7 trustee's motion to dismiss filed on September 28, 2010, Papazov's bankruptcy case was dismissed a year later on October 18, 2011, for failing to appear at multiple § 341(a) meetings of creditors. The dismissal order was not appealed. Papazov's case was closed on January 18, 2012.[7]

Meanwhile, on January 11, 2011, Lukashin filed a chapter 7 bankruptcy case in the Central District of California, case no. 2:11:11269.[8] Her case was dismissed on March 29, 2011, for failure to attend three § 341(a) meetings of creditors.

About three weeks after that dismissal, Lukashin filed a chapter 13 bankruptcy case in the Central District of California

[7] The January 18, 2012 Order Closing Case states:

Order dismissing the case of the Debtor(s) named above was entered on 10/18/2011, and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged from his/her duties in this case, his/her bond is exonerated, and the case is closed.

[8] Prior to this case, Lukashin had filed a chapter 7 bankruptcy case in the Central District of California on July 8, 2009, case no. 2:09-27405, which was dismissed on October 16, 2009, for failing to appear at three § 341(a) meetings of creditors.

-6-

on April 22, 2011, case no. 2:11:27570. Her address of record was the Grand View Property. In her Schedule A, Lukashin identified a fee interest in a "house" valued at $1,000,000 subject to a secured claim of $1,000.000. In her Schedule D, she identified AHMSI as holding a $1,200,000 claim (of which $200,000 was unsecured) against this presumed same house. Lukashin stated in her Schedule F that she owed AHMSI $66,879.00 in "defaulted mortgage payments." Based on these numbers, the "house" does not appear to be the Grand View Property. Lukashin's chapter 13 case was dismissed a few weeks later on May 12, 2011, for failure to file all required documents. The dismissal order prohibited her from filing another bankruptcy case for 180 days.[9]

Meanwhile, Deutsche Bank proceeded with its foreclosure of the Grand View Property on April 27, 2011, while Lukashin's chapter 13 case was pending. Deutsche Bank was the successful bidder at the foreclosure sale with a bid of $1,530,000, far less than the value of its first lien. Shortly after the sale, Lukashin's bankruptcy attorney sent a letter to AHMSI asserting that the Stay Relief Order obtained by Deutsche Bank in

_____

[9] After the 180 days had expired, Lukashin filed yet another chapter 7 bankruptcy case in the Central District of California on December 8, 2011, case no. 2:11-60015. The schedules filed were identical to those filed in the prior chapter 13 case. This case was dismissed on March 26, 2012, for failure to attend three § 341(a) meetings of creditors. It was closed on April 24, 2012.

Notably, before this fourth case was dismissed, Lukashin had filed an adversary complaint against Deutsche Bank and AHMSI for violating the automatic stay based on the foreclosure, the same claims Goldenberg wishes to pursue in Papazov's case. See Adv. No. 12-1330. Deutsche Bank had filed a motion to dismiss the complaint, but, before it could be decided, the adversary proceeding was dismissed due to the dismissal of Lukashin's underlying bankruptcy case.

-7-

the Papazov case was void because he did not own the Grand View Property. Her counsel advised AHMSI that the foreclosure sale had violated the automatic stay and that AHMSI needed to set it aside and cancel the trustee's deed. Deutsche Bank proceeded to record its trustee's deed on November 29, 2011. Lukashin was identified as the "Trustor" in the trustee's deed.

On July 23, 2012, Goldenberg filed a personal chapter 7 bankruptcy case in the Central District of California, case no. 2:12-35204. She identified the Grand View Property as her place of residence, but in her Schedule A she represented that she had no interest in any real property. Goldenberg did not disclose any interest in the Trust or property she was holding for the Trust as trustee. Her case was dismissed on November 2, 2012, for failing to appear at three § 341(a) meetings of creditors. It was closed on March 20, 2013, after this appeal had been filed.

At some point not clear from the record, Deutsche Bank filed an unlawful detainer action ("UD Action") against Lukashin and Goldenberg in state court to evict them from the Grand View Property. On August 3, 2012, Deutsche Bank filed a "Notice of No Stay" with respect to Goldenberg's then-pending bankruptcy case, asserting that her bankruptcy did not stay the UD Action in light of the Stay Relief Order. According to Deutsche Bank, because the Stay Relief Order had granted relief under § 362(d)(4), upon its recording it became binding in any other bankruptcy case purporting to affect the Grand View Property for two years from the date of the entry of the order, which it asserted was until December 21, 2012. On September 20, 2012, pursuant to a terminating sanctions motion filed by Deutsche Bank for

-8-

Goldenberg's and Lukashin's failures to respond to discovery requests as ordered, the state court entered a default judgment in favor of Deutsche Bank. A writ of possession was to be issued to evict the two women.

On September 24, 2012, Goldenberg, as trustee of the Trust, and Lukashin filed a wrongful foreclosure action against Deutsche Bank and AHMSI in state court, alleging the foreclosure was improper because it was based on the false Stay Relief Order and was done in violation of the stay in either Goldenberg's or Lukashin's bankruptcy cases.

On October 10, 2012, with their current counsel, Goldenberg and Lukashin filed an ex parte motion to set aside the UD Action judgment and to recall and stay all writs of possession. In short, they argued that the state court incorrectly determined that the automatic stays in either Lukashin's or Goldenberg's bankruptcy cases were not in effect in relation to the Grand View Property. They further asserted that the automatic stays in their cases precluded them from defending themselves in the UD Action, which led to their default, and their due process rights were violated when the court entered judgment against them.

In response, the state court issued an order staying the execution of the writ of possession for 30 days until November 9, 2012, with no lockout to occur until then. The stay was granted, apparently, to give Goldenberg time to pursue any necessary relief in the bankruptcy court. Goldenberg and Lukashin were required to post a bond of $8,750.00 by October 12, 2012, for the stay to take effect.

**B.    The motion to reopen and the request for injunctive relief**

On October 24, 2012, Goldenberg, as trustee of the Trust, filed an ex parte motion to reopen the Papazov bankruptcy case ("Motion to Reopen") and to stay the execution of any writs of possession regarding the Grand View Property ("Motion for Injunctive Relief").  Goldenberg wanted to reopen the Papazov case to: (1) set aside what she contended was a fraudulently acquired Stay Relief Order used to perpetrate the wrongful foreclosure; (2) prosecute an adversary proceeding against Deutsche Bank and AHMSI for violating the automatic stay; and (3) seek an order revoking the Stay Relief Order and staying all actions and proceedings which had occurred as a result.

Specifically, Goldenberg contended that upon Lukashin's execution and recording of the quitclaim deed on June 27, 2008, Lukashin had "no interest, whatsoever, in the Grand View Property."  As a result, contended Goldenberg, because Lukashin "did not own or possess any interest in the Grand View Property," the Papazov DOT had no effect.  Goldenberg further contended that Deutsche Bank knew when it sought relief from stay in Papazov's case that he had no ownership interest in the Grand View Property, and Lacombe's statements to the contrary were false.  Goldenberg argued that Lukashin's bankruptcy case filed on April 22, 2011, invoked the automatic stay with respect to the Grand View Property, which was subject to a foreclosure at the time, and therefore the trustee's sale on April 27, 2011, had violated the stay.

Deutsche Bank opposed the Motion to Reopen, contending that Goldenberg was not a "party in interest" with standing to reopen a

case under § 350(b) as she was not the debtor, a creditor, or the trustee in Papazov's case. Deutsche Bank countered Goldenberg's assertion that the Stay Relief Order was obtained by fraud, contending that it had established a colorable claim to the Grand View Property based on the Note, the DOT, Deutsche Bank's assignment, the broker's appraisal and the Papazov DOT.[10] In a supporting declaration, counsel for Deutsche Bank (again, incorrectly) stated that the Papazov DOT purported to transfer 100% of Lukashin's interest in the Grand View Property to Papazov for little or no consideration.[11]

Without a hearing, the bankruptcy court entered two orders on November 5, 2012, denying the Motion to Reopen and the Motion for Injunctive Relief. The bankruptcy court denied the Motion to Reopen, "finding that no good cause existed to reopen the case that would accord relief to the Debtors under 11 USC § 350(b)[.]" Goldenberg timely appealed both orders.

On December 14, 2012, the motions panel entered an order denying Goldenberg's emergency motion for injunctive relief to stay the execution of any writs as to the Grand View Property. The motions panel found that because the Stay Relief Order did not

[10] Deutsche Bank had also objected to the improper scope of relief sought in Goldenberg's motion because it requested to set aside judgments and stay execution of writs, which violated Local Bankruptcy Rule 5010-1. Goldenberg cured this defect by subsequently filing a separate ex parte motion requesting that relief.

[11] Deutsche Bank also argued that the Motion to Reopen should be denied because Goldenberg had failed to give notice to the former chapter 7 trustee and the United States Trustee in violation of local rule. In light of that objection, Goldenberg served the former chapter 7 trustee and the United States Trustee with her moving papers. No response was filed by either party.

-11-

contain a determination that Papazov's "filing of the petition was part of a scheme to delay, hinder, and defraud creditors under 11 U.S.C. § 362(d)(4)," it had expired 180 days after the December 14, 2010 hearing on the motion for relief from stay, which would have been May 17, 2011. Because Goldenberg had not filed a bankruptcy case before May 17, 2011, the motions panel determined that the Stay Relief Order could not possibly have had any effect on an automatic stay where she was the debtor entitled to such protection.

## II. JURISDICTION

Subject to the standing discussion set forth below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(A) and 1334. An order denying a motion to reopen is a final order. Riazuddin v. Schindler Elevator Corp. (In re Riazuddin), 363 B.R. 177, 182 (10th Cir. BAP 2007).[12] We address our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUE

Did the bankruptcy court abuse its discretion in denying the Motion to Reopen?[13]

---

[12] Deutsche Bank argues in its brief and at oral argument that the order denying the Motion to Reopen is interlocutory. Deutsche Bank cites Mass Dep't of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 53 (1st Cir. BAP 2007)(citing Paine v. Dickey (In re Paine), 250 B.R. 99, 103 n.4 (9th Cir. BAP 2000)), for the proposition that an order on a motion to reopen is "interlocutory because [it does] not resolve" the ultimate issue before the bankruptcy court, "but merely constitute[s] a preliminary step in the . . . process." These cases are inapposite as they involve orders granting motions to reopen instead of orders denying motions to reopen.

[13] Although Goldenberg appealed the bankruptcy court's order denying her Motion for Injunctive Relief, she has not asserted any (continued...)

-12-

## IV. STANDARDS OF REVIEW

Deutsche Bank disputes Goldenberg's standing as a "party in interest" to reopen Papazov's bankruptcy case. The issue of a party's standing is subject to de novo review. <u>Mayfield v. United States</u>, 599 F.3d 964, 970 (9th Cir. 2010); <u>Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)</u>, 450 B.R. 897, 906 (9th Cir. BAP 2011).

Denial of a motion to reopen a bankruptcy case is reviewed for an abuse of discretion. <u>Lopez v. Specialty Rest. Corp. (In re Lopez)</u>, 283 B.R. 22, 26 (9th Cir. BAP 2002). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. <u>In re E.R. Fegert, Inc.</u>, 887 F.2d at 957.

## V. DISCUSSION

**The bankruptcy court abused its discretion by applying a wrong legal standard, but such error was harmless as Goldenberg was not entitled to the requested relief.**

A motion to reopen a closed bankruptcy case is governed by § 350(b) and Rule 5010. The bankruptcy court has discretion

---

[13](...continued) specific argument as to how the bankruptcy court abused its discretion in denying it. As such, this issue has been waived. <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001)(issues not specifically and distinctly raised and argued in opening brief are waived). In any event, in light of our holding below, we conclude that the bankruptcy court did not abuse its discretion in denying Goldenberg the requested injunctive relief.

-13-

regarding whether it should reopen proceedings to reconsider its prior orders. <u>Elias v. Lisowski</u>, 188 F.3d 1160, 1161 (9th Cir. 1999)(citing § 350(b)).

Under § 350(b), a case may be reopened to administer assets, to accord relief to the debtor, or for other cause. The basis for Goldenberg to reopen Papazov's case was not to administer assets or to accord relief to Papazov. Hence, it had to be for "other cause," which Goldenberg argued. The bankruptcy court's only basis for denying the Motion to Reopen was because reopening the case would not afford any relief to Papazov. We agree with Goldenberg that the bankruptcy court applied a wrong standard of law in reaching its decision. As we explain below, however, this error was harmless as Goldenberg was not entitled to the requested relief in any event.

**A. Goldenberg lacked standing to reopen Papazov's bankruptcy case and to file this appeal.**

"Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" <u>In re Veal</u>, 450 B.R. at 906 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)). Even though the bankruptcy court applied an incorrect legal standard to the Motion to Reopen, Goldenberg's failure to establish standing was sufficient grounds to deny it. <u>See</u> <u>Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)</u>, 71 F.3d 353, 356 (10th Cir. 1995)(standing is a "'prudential requirement'")(quoting <u>Travelers Ins. Co. v. H.K. Porter Co.</u>, 45 F.3d 737, 741 (3rd Cir. 1995)).

Motions to reopen can be made by the debtor or any "party in interest." Rule 5010. Whether a party is a party in interest is

-14-

determined on a case by case basis. In re D'Antignac, 2013 WL 1084214, at *2 (Bankr. S.D. Ga. Feb. 19, 2013)(slip copy)(citing Peachtree Lane Assocs., Ltd. v. Grandader (In re Peachtree Lane Assocs., Ltd.), 188 B.R. 815, 824 (N.D. Ill. 1995)). Goldenberg contends she is a party in interest because she has a "stake" in Papazov's bankruptcy case due to the improper inclusion of her real property in his estate. Specifically, Goldenberg contends that she should be permitted to rectify and void the very order that wrongfully divested her of her right, title and interest in the Grand View Property. Goldenberg had the burden of showing that she had standing as a party in interest to seek the reopening of Papazov's bankruptcy case. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)(movant bears the burden of showing that she has standing for each type of relief sought).

The term "party in interest" is not defined in the Bankruptcy Code or Rules, and the Ninth Circuit has not determined "who" qualifies as a party in interest under Rule 5010. As guidance, the definition of a party in interest is broadly defined in § 1109(b) to include the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee. The Tenth Circuit has held that, however, notwithstanding the expansive definition of "party in interest" in § 1109(b), for purposes of reopening a bankruptcy case the concept of standing is "implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code." In re Alpex Computer Corp., 71 F.3d at 356-57 (but also recognizing that certain circumstances may qualify a

-15-

"debtor of a debtor" as a party in interest with standing to reopen).

Clearly, Goldenberg is not the debtor, not a creditor of Papazov's and not the former chapter 7 trustee of his case. She is also not any of the other parties referenced in § 1109(b). Nonetheless, the Fourth Circuit has interpreted "party in interest" to "include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 756 (4th Cir. 1993)(citations omitted). This definition rings of the standards set forth for Article III or "constitutional" standing. See In re D'Antignac, 2013 WL 1084214, at *2 ("The 'party in interest' analysis also is subject to the dictates of standing conferred by Article III of the Constitution.")(citing In re Phillips, 2012 WL 1232008, at *2 (Bankr. D.N.J. Apr. 12, 2012); In re Tarrer, 273 B.R. 724, 730-31 (Bankr. N.D. Ga. 2001)).

Under this broader doctrine of constitutional standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992))(internal quotations omitted). A "particularized" injury means one that affects the plaintiff in a personal and individual way. Lujan,

-16-

504 U.S. at 561 n.1.

Goldenberg has not established standing to reopen Papazov's case even under this broad doctrine. At minimum, Goldenberg has not established that she, personally, has an ownership interest in the Grand View Property. According to the quitclaim deed, the property is owned by the Trust. Notably, she never identified any interest in the property (or in the Trust) in her bankruptcy schedules. Further, the record does not establish whether the Trust is revocable, irrevocable or something else. Thus, an injury in fact is lacking.

Even assuming Goldenberg as trustee has a legally protected ownership interest in the Grand View Property, she has not shown "causation" or "redressability." Goldenberg contends that the reason Deutsche Bank was able to foreclose on the Grand View Property was because of its fraudulently obtained Stay Relief Order in Papazov's case. This is not entirely true. In reviewing this convoluted and dubious record, prior to Deutsche Bank's motion for relief from stay, the Grand View Property had been in foreclosure for two years based on Lukashin's, Goldenberg's or the Trust's (or someone else's) severe default on the Note. Although Deutsche Bank was careless to assert in its motion for relief from stay that Papazov held a 100% ownership interest in the Grand View Property by way of a "grant deed," the evidence submitted by Deutsche Bank showed that Papazov held a purported junior lien in the Grand View Property via the Papazov DOT. Therefore, it was proper for Deutsche Bank to seek relief from stay in Papazov's case to continue with the foreclosure because the Papazov DOT was, at least on its face, property of his estate. See First Yorkshire

-17-

Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 869 (9th Cir. BAP 2012)(citing First Fed. Bank of Cal. v. Cogar (In re Cogar), 210 B.R. 803, 809 (9th Cir. BAP 1997)(property of the estate is defined broadly under § 541 and includes a lien held by the debtor on property of a third party)).  The evidence further showed that Deutsche Bank established a "colorable claim" to the Grand View Property entitling it to relief.  In re Veal, 450 B.R. at 914-15.

Contrary to Deutsche Bank's position, however, the Stay Relief Order was not effective for two years as to any future debtor claiming an interest in the Grand View Property simply because the bankruptcy court granted relief under § 362(d)(4). Such in rem relief required affirmative findings by the bankruptcy court that Papazov's bankruptcy filing was part of a scheme to delay, hinder, and defraud creditors,[14] and that the scheme involved either the transfer of some interest in the Grand View Property without the secured creditor's consent or court approval, or that multiple bankruptcy filings existed affecting the Grand View Property.  In re First Yorkshire Holdings, Inc., 470 B.R. at 870-71.  The bankruptcy court made no such findings.[15]

---

[14] Section 362(d)(4) was amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3557 (2010) and became effective on December 22, 2010.  The conjunctive "and" in paragraph (4) was eliminated and replaced with the disjunctive "or."  Therefore, after December 22, 2010, a party seeking relief from stay under § 362(d)(4) must show only a scheme by debtor to delay, hinder or defraud.  Contrary to Deutsche Bank's assertion, because the Stay Relief Order was entered on December 21, 2010, it was still subject to the former version - to delay, hinder and defraud.

[15] If the Stay Relief Order had been effective for two years
(continued...)

-18-

The Stay Relief Order was effective only until May 17, 2011, and only against Papazov and his successors, transferees or assignees. Lukashin and Goldenberg were not successors, transferees or assignees of Papazov. As a result, the Stay Relief Order never had any effect in either of their bankruptcy cases. It clearly could never have had any effect in Goldenberg's case because, as the motions panel observed, she never filed a bankruptcy case before May 17, 2011. Thus, if the Stay Relief Order had no effect in Goldenberg's case, she cannot show how she was injured by it.

Despite Goldenberg's contention, the Stay Relief Order was not what gave Deutsche Bank its authority to foreclose and, as she claims, wrongfully divest her of all right, title and interest in the Grand View Property. California nonjudicial foreclosure law provided that authority. The Stay Relief Order was really a "nothing" as to Goldenberg. If anything, Goldenberg benefitted from Papazov's bankruptcy filing because it postponed the foreclosure sale yet again. Therefore, Goldenberg has not established how vacating the Stay Relief Order could provide her any relief for her alleged and unsupported injury.

Goldenberg also cannot show how Deutsche Bank's alleged violation of the stay in Lukashin's chapter 13 case injured

---

[15](...continued)
against any debtor in any future bankruptcy case claiming an interest in the Grand View Property, the applicability of such relief has been specifically upheld in the Ninth Circuit even if the bankruptcy case in which the order was obtained did not involve the borrower under the deed of trust and the borrower had no notice of the entry of the order. See In re Fernandez, 212 B.R. 361 (Bankr. C.D. Cal. 1997), aff'd, 227 B.R. 174 (9th Cir. BAP 1998), aff'd, 208 F.3d 200 (9th Cir. 2000).

-19-

Goldenberg. She has asserted, and the record reflects, that Lukashin had no recorded ownership interest in the Grand View Property when she filed her chapter 13 case on April 22, 2011. Because Lukashin did not hold legal title when she filed her petition, her nonexistent ownership of the property was not protected by the stay. Under California law, nonjudicial foreclosure affects only legal title, and not any possessory right. Williams v. Levi (In re Williams), 323 B.R. 691, 699 (9th Cir. BAP 2005)(citing In re Torrez, 132 B.R. 924, 939 (Bankr. E.D. Cal. 1991)). At best, Lukashin may have had a possessory interest in the Grand View Property protected by the stay, but that had no effect on the foreclosure sale on April 27, 2011. Id. (citing In re Butler, 271 B.R. 867, 876-77 (Bankr. C.D. Cal. 2002)).

In any event, regardless of who held legal title to the Grand View Property, whether it was Lukashin or the Trust, no stay even existed in Lukashin's chapter 13 case preventing the foreclosure because she was not an eligible debtor under § 109(g).[16] Prior to the filing of her chapter 13 case on April 22, 2011, Lukashin's chapter 7 case had been dismissed just a few weeks before on March 29, 2011, for her willful failure to attend § 341(a) meetings of creditors. That dismissal was clearly within the 180-days prescribed in § 109(g)(1), precluding her from

---

[16] Section 109(g) provides, in relevant part:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if ---
(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case[.]

-20-

eligibility as a debtor. And, because Goldenberg had no bankruptcy case pending until July 23, 2012, which was long after the foreclosure sale, no stay existed in her case that could have been violated by Deutsche Bank's foreclosure causing her damages. Besides, the Grand View Property is purportedly owned by the Trust, so the stay in Goldenberg's personal bankruptcy would have had no affect on it.

On this record, Goldenberg failed to establish standing to reopen Papazov's bankruptcy case. She has not shown any pecuniary interest or "stake" in his case that could be remedied by the reopening. Accordingly, the bankruptcy court did not abuse its discretion in denying her Motion to Reopen. Because Goldenberg lacked standing to reopen, she also lacks standing to bring this appeal. As a result, we must DISMISS for lack of jurisdiction. See Abbott v. Daff (In re Abbott), 183 B.R. 198, 201 (9th Cir. 1995)("Neither the order setting aside the reopening, nor the order reopening itself, diminished [a person's] property, increased her burdens or detrimentally affected her rights. She is not a 'person aggrieved' by either order. Consequently, she lacks standing to bring this appeal.").

**B.    Alternatively, Goldenberg could not seek to reopen Papazov's case because it was not closed pursuant to § 350(a).**

Even if Goldenberg had standing to reopen Papazov's case, she was statutorily precluded from doing so. Section 350(b) immediately follows § 350(a), which provides that a case shall be closed "[a]fter an estate is fully administered and the court had discharged the trustee[.]" The Ninth Circuit has held that a "dismissed" case cannot be reopened under § 350(b) because it was

-21-

not "closed" under § 350(a) following the administration of the estate. In <u>Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)</u>, 699 F.2d 963, 965 (9th Cir. 1982) (per curiam), the Ninth Circuit observed that a dismissed case is fundamentally different from a case that is closed:

> 11 U.S.C. § 349, treating the effects of a bankruptcy, obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to bankruptcy. After an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts. After dismissal a debtor may file another petition for bankruptcy unless the initial petition was dismissed with prejudice.

> On the other hand, a bankruptcy is normally closed after the bankruptcy proceedings are completed. At that time the debts of the bankrupt are usually discharged and the proceeds of debtor's nonexempt assets divided among creditors. A bankruptcy is reopened under 11 U.S.C. 350(b), not to restore the prebankruptcy status, but to continue the bankruptcy proceeding. The word 'reopened' used in Section 350(b) obviously relates to the word 'closed' used in the same section. In our opinion a case cannot be reopened unless it has been closed. An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing.

<u>Id.</u> (footnotes omitted).

Upon the chapter 7 trustee's motion, Papazov's bankruptcy case was dismissed on October 18, 2011, for failing to appear for § 341(a) meetings of creditors. The dismissal order was never appealed. His case was later "closed" on January 18, 2012. Notwithstanding this closure, we conclude that the holding of <u>Income Property Builders</u> applies nonetheless because Papazov's case was not closed for the reasons articulated in § 350(a) --- after full administration of the estate. Neither the Bankruptcy Code nor the Bankruptcy Rules define "fully administered," but Rule 5009(a) provides, in part, that if a chapter 7 trustee files

-22-

a final report and final account and no objection has been filed within 30 days, "there shall be a presumption that the estate has been fully administered."

The chapter 7 trustee filed a "report of no distribution" in Papazov's case on January 18, 2012, but no party was given 30 days to object as the case was closed the day the trustee filed his report and sought to be discharged. Further, the Closing Order makes no reference that Papazov's case was fully administered, stating only that it was dismissed. No Final Decree was filed using any variation of procedural Form B 271, which generally indicates the case is fully administered and discharges the trustee. Papazov did not obtain a discharge, and no proceeds of his nonexempt assets were divided among creditors. Thus, no presumption arises that the estate had been fully administered to satisfy § 350(a).

The closing in this case appears to have been more of an administrative matter as opposed to a statutory closing under § 350(a). Therefore, Papazov's case was not "closed" for purposes of § 350(a), and Goldenberg could not seek to "reopen" it under § 350(b). In re Income Prop. Builders, Inc., 699 F.2d at 965. But see In re Ross, 278 B.R. 269, 273 (Bankr. M.D. Ga. 2001) (disagreeing with Income Property Builders and holding that because the court could reopen the case without any effect on the dismissal order, a case that is dismissed and subsequently closed may nevertheless be reopened in accordance with § 350(b)). The dismissal order could have been appealed or undone by a motion under Civil Rules 59(e) or 60(b), incorporated by Rules 9023 and 9024. In re Income Prop. Builders, Inc., 699 F.2d at 965.

-23-

Accordingly, because Goldenberg could not "reopen" a bankruptcy case that was not "closed" for purposes of § 350(a), the bankruptcy court did not abuse its discretion when it denied her Motion to Reopen.

## VI. CONCLUSION

Despite the bankruptcy court applying an incorrect legal standard to the Motion to Reopen, but because Goldenberg lacked standing to seek the reopening of Papazov's case, such error was harmless, and we DISMISS her appeal for lack of jurisdiction. Alternatively, because Papazov's bankruptcy case was dismissed and not closed in accordance with § 350(a), we AFFIRM.